POCAHONTAS SUPREME COAL COMPANY, INC., Edward Borg, and William A. Metz, Plaintiffs,

v.

NATIONAL MINES CORP., National Steel Corp., Herman Mays, James R. Vilseck, and Leo Cook, Defendants.

No. 80 Civ. 2667 (KTD).

United States District Court, S. D. New York.

March 12, 1981.

Barr, Bennett & Metz, Pearl River, N. Y., for plaintiffs; Robert Becht, Pearl River, N. Y., of counsel.

Shearman & Sterling, New York City, Steptoe & Johnson, Washington, D. C., for defendants Herman L. Mays, National Mines Corp. and National Steel Corp.; William B. Pennell and Barbara Bender, New York City, James D. Hutchinson, Paul J. Ondrasik, Jr., Michael C. Miller, Michael S. Novey, Washington, D. C., of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

This is an action arising out of the alleged breach of a contract between one of the plaintiffs, Pocahontas Supreme Coal Company, Inc. ["Pocahontas"], and one of the defendants, National Mines Corp. ["National Mines"], for the production, mining and transportation of coal. The complaint sets forth eight claims for relief based on breach of contract, violations of federal and West Virginia antitrust laws, fraud, wrongful interference with a contractual relationship and tort. In addition to seeking damages for these claims, the complaint also demands an accounting.

The defendants now move pursuant to Sections 12(b)(2), (3) and (5) of the Federal Rules of Civil Procedure for an order dismissing the complaint. Defendants also seek to dismiss the fraud claims pursuant to Rule 9(b). For the foregoing reasons, these motions are granted in part only.

To address these motions, it is necessary to first introduce the various parties. This action was commenced by Pocahontas, an Ohio corporation with its only business office in Rockland County, New York, and by Edward Borg ["Borg"] and William A. Metz ["Metz"], who are both principal shareholders of Pocahontas and residents of New York.

Defendant National Mines is a Pennsylvania corporation with its principal place of business in Lexington, Kentucky. It is en-

gaged in the business of mining coal, primarily for sale to its parent corporation, National Steel Corporation ["National Steel"], which is also a defendant in this action. National Mines' coal mining operations are located in Kentucky, West Virginia, Pennsylvania and Arkansas. The only individual defendant in this action, Herman Mays, is a vice-president of National Mines, and since 1974 has lived and worked in Lexington, Kentucky.[1]

In 1977, Pocahontas entered into two contracts with National Mines, under which Pocahontas agreed to conduct mining operations on lands located in West Virginia for which National Mines held coal rights. Pocahontas was to receive a fixed price per clean ton of coal delivered to National Mines. Under the terms of the contracts, either party could terminate the agreements at will upon twenty-four hours notice. Complaint, Appendix, p. 8. After these contracts were entered into, plaintiffs Borg and Metz acquired all of the outstanding shares of Pocahontas.

In 1979, National Mines terminated the contracts after Pocahontas purportedly failed to meet National Mines' production expectations. This suit ensued.

Defendants National Mines and Mr. Mays move to dismiss the complaint as to them for three reasons: (1) improper venue, (2) lack of *in personam* jurisdiction, and (3) insufficiency of process. Defendant National Steel moves to dismiss the entire complaint as to it on grounds of *forum non conveniens*. National Steel also seeks dismissal of all claims against it, except the federal antitrust claim, on grounds that venue over the state law claims in this court is improper. All three defendants move to dismiss the fraud claims for failure to comply with the particularity requirements of Fed.R.Civ.P. 9(b). Finally, all of the defendants seek dismissal of Metz and Borg as

plaintiffs under the federal and state antitrust claims for lack of standing. Each of these motions will be discussed in order.

## I. *Venue*

### 1. *Plaintiffs' Antitrust Claim*

In considering motions challenging venue under Fed.R.Civ.P. 12(b)(3), the plaintiff has the burden of establishing venue for each claim set forth in the complaint. *K. J. Schwartzbaum, Inc. v. Evans, Inc.*, 44 F.R.D. 589 (S.D.N.Y.1968); 1 Moore's *Federal Practice*, ¶ 0.142(3) at 1384 (2d ed. 1980). With respect to plaintiffs' federal antitrust claim, Section 4 of the Clayton Act, 15 U.S.C. § 15, provides:

> [A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court ... in which the defendant resides or is found or has an agent ....

Section 12 of the Act, 15 U.S.C. § 22, broadens the scope of this provision for corporate defendants by permitting suits against corporations to be filed "in any district wherein it may be found or transacts business."

For venue purposes, an individual is found in the district where he is physically present and served with process. *International Business Coordinators, Inc. v. Aamco Automatic Transmissions, Inc.*, 305 F.Supp. 361 (S.D.N.Y.1969). By contrast, a corporation is found in any district where it "is continuously doing business or carrying on any substantial part of its activities." *Redmond v. Atlantic Coast Football League*, 359 F.Supp. 666, 671 (S.D.Ind.1973). For a corporation to "transact" business here, all that is required is a finding that the defendant is "engaging in any substantial business operations" within this jurisdiction. *United States v. Scophony Corp.*, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948).

---

1. There are two other named defendants in this action; they are Leo Cook, who is a resident of West Virginia and an employee of National Mines at all relevant times to this case, Mays' Affidavit ¶ 7, and James R. Vilseck, who is also an employee of National Mines and has never been a resident of New York. *Id.* ¶ 8. Neither Mr. Cook nor Mr. Vilseck have been served with process in this action. Therefore, for purposes of this opinion they are not considered defendants. Defendants National Mines and Mays submit nonetheless that the arguments which apply to Mr. Mays also apply to Messrs. Cook and Vilseck.

Under these legal standards, the plaintiffs have failed to show that venue is proper in the Southern District of New York to bring a federal antitrust action against either Mr. Mays or National Mines. National Mines is a Pennsylvania corporation that is not registered to do business in New York and Mr. Mays is a Kentucky resident. Hence, neither defendant resides here. Also, according to defendants, Mr. Mays has not conducted any business activities on behalf of National Mines in New York. Defendants' Memorandum, p. 9. National Mines has no facilities or personnel in New York, Eddy Affidavit ¶ 5, and any sales made to its parent company did not take place in New York. *Id.* ¶ 7.[2]

■ Venue over plaintiffs' antitrust claim against National Mines and Mays is also improper in this district under the general venue statute, 28 U.S.C. § 1391. Subsection (b) of this statute provides that where, as here, jurisdiction in a civil action is not based solely on diversity of citizenship, venue is proper where all of the defendants reside or where the claim arose. In the case at bar, it is clear that neither National Mines nor Mays reside here, nor can it be said that the claims involved arose here. The contract negotiations were held in West Virginia; the contract was executed in West Virginia and Kentucky; performance and termination occurred in West Virginia. In fact, the complaint is devoid of any reference to relevant events occurring in New York.

Plaintiffs would like to have an evidentiary hearing to determine if National Mines transacts business in New York. Plaintiffs assert that it is necessary to determine what is meant by defendants' statement that its sales to National Steel did not "take place in New York." Eddy Affidavit, ¶ 7. I do not find any ambiguity in this statement. Moreover, plaintiffs have not offered any facts to show that there may exist a question over whether National Mines transacts business in New York. A hearing on the issue would be a waste of this court's time, and, in fact, may only serve to prevent the plaintiffs from promptly adjudicating their claims in the proper forum. *See Hutton v. Piepgras,* 451 F.Supp. 205, 210 (S.D.N.Y.1978).

### 2. Common Law Claims

■ Defendants National Mines and Mr. Mays assert that venue is also improper as to plaintiffs' state law claims. These claims charge defendants with violations of West Virginia's antitrust statute, breach of contract, wrongful interference with contractual relations, and *prima facie* tort. These claims arise out of the same set of operative facts involved in plaintiffs' federal antitrust claim. Plaintiffs rely on the doctrine of pendent jurisdiction to argue that venue is proper over these state law claims. Plaintiffs assert that where a court has jurisdiction to hear a federal claim, it also has jurisdiction to hear state claims that emanate from the same nucleus of operative facts. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Although this doctrine may provide federal subject-matter jurisdiction over the state law claims, it does not establish the proper venue here since venue is improper as to the federal claim. *See Garfinkle v. Arcata National Corp.,* 360 F.Supp. 1296 (S.D.N.Y.1973); 1 *Moore's Federal Practice,* 0.140[5] at 1328–29 (2d ed. 1980).

Even if plaintiffs rely on the federal diversity statute to obtain subject-matter jurisdiction over the state law claims, this district is still not the proper venue point. Venue over diversity actions is governed by 28 U.S.C. § 1391(a) which provides that:

A civil action wherein jurisdiction is founded only on diversity of citizenship

2. National Mines does admit to making three spot market sales to New York customers since 1977. These sales were solicited over the phone by the New York customers. The coal sold represented .2 of one percent of National Mines' coal production over that period. These sales cannot be viewed as substantial enough to result in a transaction of business for venue purposes. *See, e. g., Commonwealth Edison Co. v. Federal Pacific Electric Co.,* 208 F.Supp. 936, 940 (N.D.Ill.1962).

may, except as otherwise provided by law, be brought only in the jurisdiction where all plaintiffs or all defendants reside or in which the claims arose.

■■■ As already discussed, none of the defendants reside in this district, nor did any of the claims arise here. Under § 1391(a), a corporate plaintiff resides only in its place of incorporation for venue purposes. *See Manchester Modes, Inc. v. Schuman,* 426 F.2d 629 (2d Cir. 1970); *Plastistarch Int. Corp. v. Plastistarch Corp.,* 484 F.Supp. 1312 (S.D.N.Y.1980). Since Pocahontas is incorporated in Ohio and Mr. Borg and Mr. Metz reside in New York, all of the plaintiffs do not reside here either. As a result, venue is not proper in this district to adjudicate the state law claims under either the *Gibbs* doctrine or the federal diversity rules.

## II. *Forum Non Conveniens*

■■■ The situation as to defendant National Steel is different from that of the other two defendants. National Steel concedes that venue is proper in this district as to the federal antitrust claim against it because National Steel has transacted business in New York within the meaning of Section 12 of the Clayton Act, 15 U.S.C. § 22. National Steel does join, however, with the other defendants in their arguments to dismiss the state law claims for lack of proper venue. The doctrine of pendent venue, however, operates here to permit the adjudication of these state law claims against National Steel in this district. *See Garfinkle v. Arcata National Corp., supra.* To avoid this result and take advantage of the arguments advanced by the other defendants, National Steel argues that the doctrine of *forum non conveniens* precludes an adjudication in this district of all of the claims against it, including the federal antitrust claim.

Whether a case which is properly commenced in a particular court may be dismissed on grounds of *forum non conveniens* is governed by the doctrine enunciated in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). This doc-

trine outlines certain factors relating to the "public interest" and "private interests" of the litigants which determine the proper forum for bringing a particular case. *Id.* at 508–09, 67 S.Ct. at 843. In viewing these factors, it must be remembered that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* at 508, 67 S.Ct. at 843. Moreover, in assessing the inconvenience of a particular forum, the realities of modern transportation and communication should be taken into account. *Manu International, S.A. v. Avon Products, Inc.,* 641 F.2d 62 (2d Cir. 1981); *Calavo Growers of Cal. v. Belgium,* 632 F.2d 963 (2d Cir. 1980).

Defendant National Steel has advanced two principal contentions that call for dismissal of the complaint against it. First, National Steel argues that if the complaint is dismissed as to the other defendants, dismissal of the rest of the complaint is called for. National Steel considers itself a nominal defendant which had no involvement in the events in question. Moreover, those events took place outside of New York. According to National Steel, there is no justification for the expenditure of judicial resources in this district on a case that has such a remote connection with this district, particularly where the principal defendants are going to be tried in another district anyway.

Second, National Steel contends that because the operative events took place near West Virginia, most of the evidence and witnesses will be located there. In addition, many witnesses will not be subject to this court's compulsory process.

I do not believe either of these arguments show that it will be easier and fairer to try this case elsewhere than in New York. With respect to the location of witnesses in this case, it is not clear that New York is inconvenient. Plaintiffs reside in this district and it is likely many of their witnesses do also. It is true that the defendants in this case and their employees who will likely be called as witnesses do not reside in New York. Although they may under-

standably be reluctant to travel, so will plaintiffs' witnesses. In short, I do not believe the location of potential witnesses calls for a disruption of the plaintiffs' choice of forum.

Defendants argument that it would be inappropriate to continue only the antitrust claim against National Steel in this district and dismiss the claim against the other defendants is unavailing at this point in the litigation. At present, it is not clear what claims will be pursued by the plaintiffs and where such claims will be litigated. Duplication of efforts by the parties and the courts is too speculative a factor at present to consider. Accordingly, I do not believe this is an appropriate case for the exercise of my discretion to dismiss on grounds of *forum non conveniens.*

### III. *In Personam Jurisdiction*

Issues of venue are meaningless, of course, if this court lacks *in personam* jurisdiction. Fundamental to defendants National Mines and Mr. Mays' motion to dismiss, therefore, is their argument that this court lacks *in personam* jurisdiction over them.[3] Plaintiffs instituted this action by service of a summons and complaint upon National Mines and Mr. Mays in Lexington, Kentucky. Under Fed.R.Civ.P. 4(e) such extraterritorial service is permitted when authorized by a federal statute or law of the state where the district court sits. In this case, neither federal antitrust laws nor New York laws authorize extraterritorial service to obtain personal jurisdiction over these defendants.

### 1. *In Personam Jurisdiction under Federal Antitrust Laws*

■ Section 4 of the Clayton Act, 15 U.S.C. § 15, does not authorize private plaintiffs in antitrust actions to effect extraterritorial service of process upon individual defendants in antitrust suits. *Orange Theatre Corp. v. Rayherstz*, 139 F.2d 871, 875 (3d Cir.), *cert. denied*, 322 U.S. 740, 64 S.Ct. 1057, 88 L.Ed. 1573 (1944); *Athletes Foot of Delaware, Inc. v. Ralph Libonati, Inc.*, 445 F.Supp. 35, 48 (D.Del.1977).

This section only provides for service of process on non-corporate defendants in the district where the action is brought. Consequently, service of process upon defendant Mays in Lexington, Kentucky was invalid.

Section 12 of the Clayton Act, 15 U.S.C. § 22, applies only to corporate defendants and authorizes service of process "in the district of which it is an inhabitant, or wherever it may be found." Such extraterritorial service of process is permissible only in cases where there is proper venue for the underlying action. *Goldlawr, Inc. v. Herman*, 288 F.2d 579, 581 (2d Cir. 1961), *rev'd on other grounds*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); *Athletes Foot of Delaware, Inc. v. Ralph Libonati, Inc., supra*, 445 F.Supp. at 45; *Friends of Animals, Inc. v. American Veterinary Medical Assn.*, 310 F.Supp. 620, 624 (S.D.N.Y.1970). Since venue over the claim against National Mines is improper in the Southern District of New York, Section 12 provides no basis for extraterritorial service of process upon National Mines.

### 2. *In Personam Jurisdiction under New York Law*

■ Plaintiffs argue that *in personam* jurisdiction over National Mines and Mr. Mays exists by virtue of New York's Long-Arm Statute, Section 302(a) of N.Y.C.P.L.R. This section provides in relevant part:

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or

---

**3.** Defendant National Steel does not join this portion of the other defendants' arguments.

property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequence in the state and derives substantial revenue from interstate or international commerce;

. . . .

With respect to defendant Mays, it is clear that this court lacks jurisdiction over his person. Plaintiffs have not alleged that Mays transacts business in New York nor that he committed a tort within the state. As a result, Mays does not fall within the reach of § 302.

With respect to National Mines, plaintiffs argue that jurisdiction exists in New York because National Mines committed a tortious act without the state causing injury within the state. Plaintiffs allege that defendants' tortious acts caused plaintiffs to suffer an economic injury in New York. The only specific tortious acts alleged are fraudulent inducement of plaintiffs Borg and Metz to acquire Pocahontas stock from a third party and to "develop the Pocahontas mine" Complaint §§ 32–41, and fraudulent inducement of Pocahontas to enter into the mining contracts. *Id.* ¶¶ 42–46. Plaintiffs request an opportunity for discovery to determine whether National Mines should have expected their actions to have consequences in New York.

I need not reach the issue of whether such an expectation existed here since it is apparent from the record before me that no injury took place in New York. It appears that plaintiffs assume an injury occurred in New York because the individual plaintiffs resided here and the corporate plaintiff has its principal place of business here. [Plaintiff's Memorandum, p. 7]. New York law provides, however, that the occurrence of financial consequences in New York due to the fortuitous location of the plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3). *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326, 425 N.Y.S.2d 783, 787, 402 N.E.2d 122, 126 (1980). *See also, American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.*, 439 F.2d 428 (2d Cir. 1971). The record before me indicates that the contracts involved were negotiated in West Virginia, executed by the parties in West Virginia and Kentucky, and pertained to services to be performed in West Virginia. Any fraudulent representations by defendants would have taken place while plaintiffs were in West Virginia and Kentucky. Also, any direct injury from such a fraud would have been from the expenditure of funds by plaintiffs in West Virginia for the mining operations there. Although defendants may have foreseen that their actions would have financial consequences in New York, there is not sufficient evidence to provide a predicate for *in personam* jurisdiction here. *See Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897 at 899–900 (2d Cir., December 19, 1980).

### IV. *Plaintiffs' Claims for Fraud*

All of the defendants assert in the instant motions that plaintiffs' claims for fraud fail to comply with the requirements of Fed.R. Civ.P. 9(b).

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This rule serves two distinct and important purposes. It protects the defendant's reputation from unfounded and irresponsible charges, *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir. 1972), and also insures that sufficient information is supplied to the defendant to enable him to respond to the charges and prepare his defenses. *Denny v. Barber*, 576 F.2d 465, 469 (2d Cir. 1978); *Fein v. Shearson Hayden Stone, Inc.*, 461 F.Supp. 137, 141 (S.D.N.Y. 1978). This requires that in addition to pleading the time, place and contents of the allegedly fraudulent statements, the identity of the maker of the misrepresentation must be disclosed. *Dominicus Americana Bohio v. Gulf & Western Industries, Inc.*,

473 F.Supp. 680, 692 (S.D.N.Y.1979); *Robertson v. National Basketball Ass'n*, 67 F.R.D. 691, 697 (S.D.N.Y.1975).

The third and fourth counts of plaintiffs' complaint are based on the alleged representation by the defendants that National Mines would not exercise its contractual right to terminate the agreements. These representations were fraudulent because:

defendants, upon information and belief, at all relevant times, intended to terminate the Pocahontas/National Mines contracts at such time as plaintiffs had caused the expenditure of substantial sums of their own and Pocahontas' funds to develop the mining properties.

Complaint, ¶ 18.

■ These allegations of fraud are defective for several reasons. First, the identity of the person making the fraudulent statements is vague. The complaint refers to the maker as either National Mines, National Steel or Messrs. Mays, Cook, and Vilseck as a group. No statement by any specific individual is averred. Thus, it is not clear who told plaintiffs that the termination clause would never be exercised. This vague allegation is particularly prejudicial to National Steel, none of whose agents or officers have been named as defendants in this action. Second, the time, place and manner in which these misrepresentations were made are not specifically indicated. For these reasons, counts three and four of the complaint must be dismissed.

### V. *Individual Plaintiffs' Standing*

■ Plaintiffs Borg and Metz have alleged that the defendants' actions are in violation of federal antitrust laws. In order for private plaintiffs to maintain an action under the antitrust laws, they must suffer direct injury from the acts of the defendant which allegedly violate the antitrust laws. Stockholders have been denied standing to bring an antitrust suit for harm suffered as a consequence of injury to the corporation allegedly caused by defendants' acts. *Long Island Lighting Co. v. Standard Oil Co. of California*, 521 F.2d 1269, 1274 (2d

Cir. 1975), *cert. denied*, 423 U.S. 1073, 96 S.Ct. 855, 47 L.Ed.2d 83 (1976); *accord, Deaktor v. Fox Grocery Co.*, 475 F.2d 1112, 1115 (3d Cir.), *cert. denied*, 414 U.S. 867, 94 S.Ct. 65, 38 L.Ed.2d 86 (1973). Plaintiffs Borg and Metz have admitted that their only relation to the alleged antitrust conspiracy is that they are shareholders of the corporation against which defendants' anticompetitive acts were directed. Complaint ¶ 3 and ¶ 4. Consequently, plaintiffs Borg and Metz do not have the requisite standing to maintain an action under the antitrust laws. Therefore, the motion to dismiss the antitrust action brought by Borg and Metz is granted.

### VI. *Conclusion*

In sum, the motion of defendants National Mines and Mays to dismiss the complaint for improper venue and lack of *in personam* jurisdiction is granted.

The motion of defendant National Steel to dismiss the complaint on grounds of *forum non conveniens* and to dismiss the state law claim on grounds of improper venue is denied.

The motion by all defendants to dismiss counts three and four of the complaint is granted. Plaintiffs are granted leave to replead.

Finally, the motion by all defendants to dismiss Borg and Metz as plaintiffs under counts one and two of the complaint for lack of standing is granted.

SO ORDERED.