The GENERAL ELECTRIC COMPANY, p.l.c., the English Electric Company Limited, and Ruston & Hornsby Limited, individually and on behalf of Ruston-Bucyrus Limited, Plaintiffs,

v.

BUCYRUS–ERIE COMPANY and Ruston-Bucyrus Limited, Defendants.

No. 81 Civ. 6360(CES).

United States District Court, S.D. New York.

Oct. 22, 1982.

David Boies, Cravath, Swaine & Moore, New York City, for plaintiffs.

William E. Jackson, Milbank, Tweed, Hadley & McCloy, New York City, for defendants.

## MEMORANDUM DECISION

STEWART, District Judge:

Plaintiffs are corporations organized under the laws of the United Kingdom and are minority shareholders of defendant Ruston-Bucyrus, likewise a British corporation. They bring this action both individually and derivatively for alleged wrongs which they contend violate both the antitrust laws of the United States and also certain fiduciary duties owed them by defendant Bucyrus-Erie, the majority shareholder in Ruston-Bucyrus. Bucyrus-Erie is a United States corporation. Before us is a motion by Ruston-Bucyrus ("Ruston") to dismiss for lack of personal jurisdiction, improper venue, and improper service.

### In Personam Jurisdiction Over Ruston

The personal jurisdiction issues raised by defendant Ruston reduce to a two part question of statutory interpretation: does the general venue statute found at 28 U.S.C. § 1391(d) (1976) supplement the special venue provision of § 12 of the Clayton Act, 15 U.S.C. § 22 (1976) in antitrust cases, and if so, does reliance on section 1391(d) for venue render unavailable extraterritorial service of process and in personam jurisdiction otherwise obtainable when venue is met under section 12? Because we resolve these issues in the plaintiffs' favor, we do not consider other possible grounds for jurisdiction raised by the parties.

■ Rule 4(e) of the Federal Rules of Civil Procedure allows service of process on an out of state party when a statute of the United States so authorizes. Section 12 of the Clayton Act authorizes out of state or "extraterritorial" service on a corporate defendant in antitrust actions by stating "all process in such cases may be served . . . wherever it [the corporation] may be found." 15 U.S.C. § 22 (1976). By its authorization of service outside the state, this section is construed as conferring in personam jurisdiction over the corporation served. *See Goldlawr, Inc. v. Heiman,* 288 F.2d 579 (2d Cir.1961), *reversed on other grounds,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); *cf. Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326 (2d Cir.1972) (construing nearly identical language in section 27 of the Securities Exchange Act of 1934). The threshold issue here is under what circumstances may a plaintiff rely on section 12's extraterritorial service provision to thereby obtain personal jurisdiction over a corporate defendant.

Section 12 states in its entirety:

Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

The long sentence of which section 12 consists has two clauses, separated by a semicolon. One relates to venue, the other to service and, as noted, personal jurisdiction. Ruston argues that personal jurisdiction via the extraterritorial service clause of section 12 is available only when the special venue requirements found in the first clause of section 12 are met. The plaintiffs assert in essence that the extraterritorial service provision of section 12 is independent of section 12's venue clause and is always available in antitrust cases, that personal jurisdiction in such cases requires only that the parameters of the due process clause not be exceeded, and that venue may be satisfied by reference to either section 12 of the Clayton Act, or 28

U.S.C. § 1391(d) (1976), one of the general venue provisions. Since there is some doubt as to whether section 12 venue can be satisfied in this case, the possible application of section 1391(d) could be crucial. Section 1391(d), if it applies, clearly can be satisfied since Ruston is unquestionably an alien corporation and that section provides simply: An alien may be sued in any district.

■ We find that the availability of Section 12 service and personal jurisdiction do not depend upon the venue requirements of section 12 being met and that satisfaction of venue under section 1391(d) is sufficient. Reaching this conclusion requires a two step analysis. First, it must be inquired whether Congress intended that section 1391(d) venue be available to litigants in antitrust actions simply for venue purposes, ignoring for the moment the question of personal jurisdiction. Then it must be considered whether reliance on section 1391(d) for venue means that section 12's extraterritorial service and personal jurisdiction provision is no longer applicable, so that in personam jurisdiction must be satisfied some other way.

Although the Supreme Court has not spoken directly on the issue of whether section 1391(d) supplements the special venue provision of section 12, it has passed on the relationship of general and special venue provisions in at least three other contexts, and in so doing has provided a framework for the analysis here. *See Brunette Machine Works, Ltd. v. Kockum Industries, Inc.,* 406 U.S. 706, 92 S.Ct. 1936, 32 L.Ed.2d 428 (1972); *Fourco Glass Co. v. Transmirra Products Corp.,* 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957); *Pure Oil Co. v. Suarez,* 384 U.S. 202, 86 S.Ct. 1394, 16 L.Ed.2d 474 (1966).[1] In *Pure Oil* the Court distinguished *Fourco,* where the special venue provision governing patent infringement suits, 28 U.S.C. § 1400(b), was found to exclusively control in such cases, and held instead that the special venue provision of the Jones Act, 46 U.S.C. § 688 (1964), is not exclusive but rather is supplemented by the general venue provisions of 28 U.S.C. *Id.* The Court further indicated that the *Fourco* situation of exclusivity is the exception, not the rule, and it identified two factors which were determinative in *Fourco* in finding exclusivity. The first was evidence of concurrent congressional action on both the special venue provision and the general venue provision from which it could be inferred Congress meant the two statutes to stand separately. In *Fourco,* the special venue provision had been repassed unchanged as part of the same Act which created the general venue statute with which it conflicted. From this concurrent action the Court reasonably deduced an intent by Congress that the otherwise inconsistent provisions be deemed to govern different causes of action. *Id.* at 206–207, 86 S.Ct. at 1396–1397.

The second factor relevant in finding exclusivity in *Fourco* was evidence of an original congressional intent behind the enactment of the special venue provision that venue in patent infringement cases be restrictive. At the time the *Fourco* venue provision was passed a more liberal interpretation of venue law in patent cases prevailed and the new law was enacted specifically to limit this interpretation. *Id.* at 207, 86 S.Ct. at 1397.

---

1. It should be noted that the *Fourco* and *Pure Oil* decisions confronted a slightly different problem than is presented here. In both of those cases the Court considered whether the general venue provision "supplemented" the specific provision so as to actually modify the latter's meaning. Here, we are concerned not with whether the general provision changes the meaning of the specific, but whether the general provision provides a means of satisfying venue in addition to that allowed by the specific provision. We think it clear, however, that if the criteria outlined in *Fourco* and *Pure Oil* for finding that one provision modifies the other are met, then, *a fortiori,* we can conclude that section 1391(d) supplements, in the sense of merely being in addition to, section 12. In any case, the *Fourco* and *Pure Oil* criteria are germane here since in both of those cases and in this one, the net effect of finding that the general provision supplements the specific is that venue is broadened. *See Pure Oil v. Suarez* at 205–207, 86 S.Ct. at 1396–1397.

As was true in *Pure Oil,* these exclusivity factors are not implicated here. Not only was there no concurrent action taken on section 12 when section 1391(d) was enacted in 1948, but Congress has taken no action on section 12 since the enactment of section 1391(d). Under the *Pure Oil* analysis, this lack of congressional action means there is nothing from which to infer that Congress intended to affirm (or reaffirm) section 12's exclusivity in the light of section 1391(d)'s subsequent passage.

Nor is exclusivity bolstered by the second factor identified in *Pure Oil,* an original congressional desire to restrict venue by passing the special venue statute. As was true with the special venue provision in *Pure Oil,* section 12 of the Clayton Act was passed not to restrict venue, but rather to expand it. Its "plain remedial purpose . . . was . . . to enlarge the jurisdiction given by section 7 of the Sherman Act over corporations." *United States v. Scophony Corp.,* 333 U.S. 795, 806–807, 68 S.Ct. 855, 861, 92 L.Ed. 1091 (1948).[2]

In short, as was the case in *Pure Oil,* "there is nothing to show a congressional purpose negativing the more natural reading of the two venue sections together." *Pure Oil v. Suarez,* 384 U.S. 202, 206, 86 S.Ct. 1394, 1396, 16 L.Ed.2d 474 (1965). The *Fourco* decision, finding that its special venue provision exclusively governs in patent actions, "must be taken as limited to the particular question of statutory construction presented there." *Id.*

Strengthening this conclusion, and most persuasive of all, is the more recent Supreme Court decision in *Brunette Machine Works, Ltd. v. Kockum Industries, Inc.,* 406 U.S. 706, 92 S.Ct. 1936, 32 L.Ed.2d 428 (1972). In *Brunette* the Court considered the relationship of section 1391(d) and the special patent venue provision involved in *Fourco.* The Court suggested that even when the *Fourco* criteria might otherwise appear to have been met, *Fourco* may have no relevance if the general venue provision in question is section 1391(d), because section 1391(d) is not like other general venue provisions. The *Brunette* Court held, "Section 1391(d) is not derived from the general venue statutes that [a special venue provision might otherwise be read as] intended to replace." *Id.* at 713, 92 S.Ct. at 1940. Rather, section 1391(d) derives from a tradition going "back to the beginning of the Republic" under which "suits against aliens were left unrestricted, and could be tried in any district, subject only to the requirement of service of process." *Id.* at 708, 92 S.Ct. at 1938. Absent some express congressional intent to the contrary, a special venue provision should not, under the clear language of *Brunette* be deemed exclusively controlling when the defendant involved is an alien. The principle that an alien may be sued in any district is simply too deeply rooted to assume otherwise. See *id.* at 714, 92 S.Ct. at 1940.

For the foregoing reasons, we read 28 U.S.C. § 1391(d) (1976) as supplemental to the venue provision embodied in section 12 of the Clayton Act, 15 U.S.C. § 22 (1976). The weight of authority is in agreement.[3]

---

2. In *Scophony* the Court gave a liberal reading to section 12 venue in a case which, like this one, involved an alien corporation. It might reasonably be inquired, then, why the Court needed to consider how broad section 12 venue was when section 1391(d) could be satisfied so simply. The answer is that *Scophony* was decided several months before section 1391(d) was enacted, and section 1391(d) had no statutory predecessor. See Reviser's Note, 28 U.S. C.A. § 1391 (1976).

3. *See, e.g., Ballard v. Blue Shield of Southern West Virginia, Inc.,* 543 F.2d 1075 (4th Cir. 1976); *Board of County Commissioners v. Wilshire Oil Co. of Texas,* 523 F.2d 125, 129–130 (10th Cir.1975); *United States Dental Institute v. American Association of Orthodontists,* 396 F.Supp. 565, 573 (N.D.Ill.1975); *Redmond v. Atlantic Coast Football League,* 359 F.Supp. 666, 669 (S.D.Ind.1973); *Morton Buildings of Nebraska, Inc. v. Morton Buildings, Inc.,* 333 F.Supp. 187, 193 (D.Neb.1971); *California Clippers, Inc. v. United States Soccer Football Association,* 314 F.Supp. 1057, 1062 (N.D.Cal. 1970); *Philadelphia Housing Authority v. American Radiator and Standard Sanitary Corp.,* 291 F.Supp. 252, 257–259 (E.D.Pa.1968); *New York v. Morton Salt Co.,* 266 F.Supp. 570 (E.D.Pa.1967, *aff'd,* 385 F.2d 122 (3d Cir.1967), *cert. denied,* 390 U.S. 995, 88 S.Ct. 1195, 20 L.Ed.2d 94 (1968).

Establishing that the plaintiffs may rely on section 1391(d) for venue does not dispose of the in personam arguments proffered by the defendant. As noted, Ruston asserts that the specific venue requirements of section 12 must be met before the extraterritorial service and the resulting personal jurisdiction provided for in section 12 may be relied on by the plaintiffs. If venue cannot be satisfied under section 12, in other words, then the plaintiffs must rely on some means other than section 12 by which to obtain personal jurisdiction.

In arguing for this construction of section 12, Ruston places much reliance on *Goldlawr, Inc. v. Heiman*, 288 F.2d 579 (2d Cir. 1961), *rev'd on other grounds,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) and other cases [4] which do contain language supportive of the view that section 12 service and personal jurisdiction depend on section 12 venue being met. In *Goldlawr,* the Second Circuit focused on the words "in such cases," introducing the service of process clause of section 12 and construed them to mean that "the extraterritorial service privilege is given only when the [section twelve venue] requirements are satisfied." *Id.* at 581.

■ Significantly, however, the *Goldlawr* court did not discuss the applicability of section 1391(d) or any other general venue provision to the question of service and personal jurisdiction under section 12. This is likely so because the corporation around which the personal jurisdiction question centered in *Goldlawr* was an out of state but not an *alien* corporation. The general venue provision of section 1391 governing such domestic corporations is, in contrast to section 1391(d) governing alien corporations, *more* difficult to satisfy than the section 12 venue requirements.[5] Not surprisingly, then, the *Goldlawr* court did not need to consider the impact of this general venue provision.

■ As a consequence, we do not find conclusive the *Goldlawr* language suggesting that there must be reliance on section 12 venue before section 12 extraterritorial service and personal jurisdiction may be deemed available.[6] This does not mean,

4. See cases cited in n. 6, *infra.*

5. Section 1391(c) establishes that a corporation shall be deemed to reside (for venue purposes) and may be sued in a district where it is either incorporated, licensed to do business, or is doing business. 28 U.S.C. § 1391(c) (1976). In contrast, section 12 allows suit where a corporation is an inhabitant, is found or transacts business. Being an "inhabitant" is held to mean incorporated under the laws of that jurisdiction. *E.g., Aro Manufacturing Co. v. Automobile Body Research Corp.,* 352 F.2d 400, 404 (1st Cir.1965), *cert. denied,* 383 U.S. 947, 86 S.Ct. 1199, 16 L.Ed.2d 210 (1966). Being "found" in a district is generally equated with "doing business" there, and requires greater contacts than does "transacting business." *E.g., Wood v. Santa Barbara Chamber of Commerce, Inc.,* 507 F.Supp. 1128 (D.Nev.1980); *Grappone, Inc. v. Subaru of America, Inc.,* 403 F.Supp. 123, (D.N.H.1975); *Friends of Animals Inc. v. American Veterinary Medical Ass'n,* 310 F.Supp. 620 (S.D.N.Y.1970). Thus, it is the transacting business alternative that sets section 12 apart from section 1391(c) and means that under most circumstances, venue will be easier to satisfy under section 12 than under the general venue provisions, at least for domestic corporations.

6. The court is unpersuaded for similar reasons by the "legion" of other cases which the defendant argues support its proposed statutory construction. While these cases do, like *Goldlawr,* suggest that section 12 venue is a predicate to the availability of section 12 jurisdiction, a thorough look reveals that most involved domestic corporations, and so, as with *Goldlawr,* had little incentive to consider the applicability of the general venue statutes. *E.g., Academy of Ambulatory Foot Surgery v. American Podiatry Ass'n,* 516 F.Supp. 378 (S.D.N.Y.1981); *Health Care Equalization Comm. v. Iowa Medical Soc'y,* 501 F.Supp. 970, 980 (S.D.Iowa 1980); *Wood v. Santa Barbara Chamber of Commerce,* 507 F.Supp. 1128, 1141–42 (D.Nev.1980); *Chromium Industries, Inc. v. Mirror Polishing & Plating Co.,* 448 F.Supp. 544, 550 (N.D.Ill.1978); *Frederick Cinema Corp. v. Interstate Theatres Corp.,* 413 F.Supp. 840, 840–842, n. 1 (D.D.C.1976); *J. & B. & S. Restaurant Corp. v. Henry's Drive-In, Inc.,* 353 F.Supp. 389 (W.D.N.Y.1973); *Friends of Animals, Inc. v. American Veterinary Medical Ass'n,* 310 F.Supp. 620 (S.D.N.Y.1970). Others cited by the defendant actually did consider whether a general venue statute could be met before finding a lack of personal jurisdiction, and so are not supportive of defendant's argument that only section 12 venue is a predicate to section 12 in personam jurisdiction.

however, that we may accept plaintiffs' construction. Plaintiffs argue that the words "in such cases" introducing the service of process clause in section 12 refer not to cases in which section 12 venue has been satisfied but rather to the words, "Any suit, action, or proceeding under the antitrust laws against a corporation . . .," which begin section 12. At least one other court has agreed with this construction, *Scriptomatic, Inc. v. Agfa-Gevaert, Inc.,* [1973] Trade Cas. (CCH) ¶ 74,594 (S.D.N.Y. June 28, 1973), and the usual rules of syntax would seem to be in accord.[7] We do not feel free to accept the plaintiffs' construction, however, given the language of *Goldlawr* into which it seems to run headlong. Instead, we construe *Goldlawr* as requiring that *some* applicable venue statute must be met before section 12's service and personal jurisdiction clause may be invoked, and since we have already held that section 1391(d) is available for venue, we now hold that plaintiffs' reliance on section 12's extraterritorial service and personal jurisdiction provision is sound.

This resolution is not free from doubt, but it would simply be anomalous if, as *Pure Oil* and the preponderance of subsequent lower court decisions dictate,[8] section

1391(d) were held supplemental to section 12, but only for some purposes. We find no basis for such a conclusion.

Also persuasive, as the court found in *Scriptomatic, Inc. v. Agfa-Gevaert, Inc.,* [1973] Trade Cas. (CCH) ¶ 74,594 at 94,632 (S.D.N.Y. June 28, 1973)—apparently the only other case to squarely deal with the precise issue of statutory interpretation involved here[9]—is the Second Circuit's decision in *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326 (2d Cir. 1972). *Leasco* is persuasive because it answers a lingering question which follows from our holding that section 12 venue with its "inhabitant", "found" or "transacts business" requirements is not a predicate to the availability of section 12 personal jurisdiction; namely, what does limit the exercise of personal jurisdiction under section 12 if section 12 venue need not be met?

The problem is that if section 1391(d) venue is the only predicate for section 12 personal jurisdiction, and no other limits on the exercise of that jurisdiction are read into the section 12 service and personal jurisdiction clause itself, then a plaintiff could get jurisdiction over a foreign corporation in "any district" in the United States

---

*E.g., Pocohantas Supreme Coal Co. v. Nat'l Mines Corp.,* 90 F.R.D. 67, 72 (S.D.N.Y.1981); *Athletes Foot of Delaware, Inc. v. Ralph Libonoti Co.,* 445 F.Supp. 35, 45 (D.Del.1977). Indeed these cases would appear to best support the conclusion we have drawn here, that *some* venue statute must be satisfied before section 12 personal jurisdiction may be obtained. Finally, a number of cases the defendant cites expressly reserved the issue of whether general venue provisions are available in antitrust cases and so are anything but conclusive that such provisions are not available. *E.g., O.S.C. Corp. v. Toshiba America, Inc.,* 491 F.2d 1064 (9th Cir.1974); *Smokey's of Tulsa, Inc. v. American Honda Motor Co.,* 453 F.Supp. 1265 (E.D.Okla.1978). *See also Albert Levine Assocs. v. Bartoni and Cotti,* 309 F.Supp. 456 (S.D.N.Y.1970) (expressing doubt that the general venue provisions are supplemental but considering whether they are met nevertheless).

7. The word "such" means "the aforementioned," *Webster's Third International Dictionary* (unabr. ed.1963). Thus, when "such" precedes a noun it is assumed to refer to a particular antecedent noun and any dependent adjec-

tive or adjectival clauses modifying that noun, but not to any other part of the preceding clause or sentence. Applying this rule to section 12, "in such cases" would refer to "any suit, action, or proceeding under the antitrust laws against a corporation," and not to anything else in section 12's first clause.

This construction may also agree best with the language in *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326, 1340 to the effect that "in such cases" is independent of venue and "speaks expressly only to service of process." *Leasco* construed 15 U.S.C. § 78aa, apparently modeled on section 12. *Id.* at 1340, n. 10.

8. See n. 3, *supra.*

9. *Chrysler Corp. v. Fedders Corp.,* 643 F.2d 1229, 1237–38, n. 3 (6th Cir.1981), *cert. denied,* 454 U.S. 893, 102 S.Ct. 388, 70 L.Ed.2d 207 (1981), for example, never reached the issue though it considered section 1391(d) venue and section 12 personal jurisdiction as potentially applicable together. *See also Weinstein v. Norman M. Moris Corp.,* 432 F.Supp. 337 (E.D. Mich.1977).

even if the corporation had never had contacts with this country. Such a construction of section 12 would clearly be violative of due process, *see generally World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 580, 62 L.Ed.2d 490 (1980); *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), and would argue against the reading of section 12 we have made.

▮ The decision in *Leasco* is significant in this regard. In *Leasco* the court construed the venue and service section of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, which contains nearly identical language to that of section 12 [10] and which the court specifically noted "appear[s] to have been modeled on section 12 of the Clayton Act." 468 F.2d at 1340, n. 10. In particular, the court interpreted a "wherever found" service clause, nearly identical to that of section 12, as showing that "Congress meant to assert personal jurisdiction over foreigners not present in the United States to but, of course, not beyond the bounds permitted by the due process clause of the Fifth Amendment." *Id.* at 1340. From this we conclude that section 12 personal jurisdiction is also intended to be as broad as due process, and no broader. Limits on the exercise of in personam jurisdiction under section 12 are inferred from the language of that section itself, and the absence of the section 12 venue limitations, due to reliance on section 1391(d) for venue, is therefore irrelevant.

Finally, *Leasco* is supportive of our view in that it construes a statute nearly identi-

cal to section 12 and does not even hint that the process clause is contingent upon the venue clause being met. Indeed, the *Leasco* court suggests that the service clause is wholly independent of the venue clause by stating, "The second sentence and the first portion of the third deal with venue; the last portion of the third speaks expressly *only* to service of process." 468 F.2d at 1340. [Emphasis added.] It is true, as Ruston contends, that *Leasco* did not address the statutory construction issue presented here, but we deem it significant that in analyzing whether there was personal jurisdiction over the defendants in that case the *Leasco* court did not consider whether the special venue requirements were met. Rather, the court analyzed the personal jurisdiction issue by discussing whether there were sufficient contacts to satisfy the due process clause of the fifth amendment. *Id.* at 1340–43.

▮ *Leasco* makes clear that when Congress grants to the federal courts the type of maximal in personam jurisdiction involved here, the forum with which the defendant must have the minimum contacts required by due process is the United States, not, as Ruston urges, the district, or for that matter the state. *See Leasco* at 1341.[11] In their opposition memorandum, plaintiffs assert that Ruston fulfills this due process requirement because it is both doing business in the United States, and because it engaged in an act, restraint of competition, which had an effect here. Defendants, apparently in the hope this court would hold venue under section 12 necessary to the action, have made no attempt to rebut this assertion. Further, on the basis

---

10. That section provides in relevant part:

> Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

15 U.S.C. § 78aa (1976).

11. The *Leasco* court determined whether due process was satisfied by analyzing defendants' contacts with the United States. *See also Texas Trading v. Federal Republic of Nigeria,* 647 F.2d 300, 314 (2d Cir.1981) (where service is made on an alien pursuant to a federal extraterritorial service provision "the relevant area in delineating contacts is the entire United States, not merely New York"); *Chrysler Corp. v. Fedders Corp.,* 643 F.2d 1229, 1237–38 (6th Cir.1981), *cert. denied,* 454 U.S. 893, 102 S.Ct. 388, 70 L.Ed.2d 207 (1981).

of the uncontroverted facts there seems to be little difficulty in finding the requisite contacts. Plaintiffs establish, at least prima facie, that:

Ruston has regularly exported machines which it manufactures, spare parts for those machines, and parts for Bucyrus-Erie machinery to the United States over the last several years.

The value of these exports is well into the millions of dollars.

Ruston executes contracts within the United States and has seen fit to adopt a United States corporate seal for this purpose.

Ruston holds patent rights under the laws of the United States and Great Britain and has licensed United States corporations to use both types of patent rights.

Ruston regularly buys electrical equipment from Bucyrus-Erie and other United States corporations, and buys diesel engines from American manufacturers "through Bucyrus-Erie's purchasing department" to get better prices and avoid having to send its own purchasing agents from England.

These contacts would seem to unmistakably evince a desire by Ruston to avail itself of the "privileges and benefits" of United States law such that "it has clear notice that it is subject to suit there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Further, while Ruston asserts that plaintiffs' proof of jurisdictional contacts is misleading and based upon unauthenticated documents, it has made no attempt whatsoever to show that the documents and other evidence involved are anything other than what they plainly appear to be.

Accordingly, we deny the motion to dismiss for lack of personal jurisdiction, venue, and improper service.

SO ORDERED.