In re: MAGNETIC AUDIOTAPE
ANTITRUST LITIGATION

Texas International Magnetics, Inc., f/k/a Hix Recording, on behalf of itself and all others similarly situated, and Crown Magnetics, Inc., Plaintiffs–Appellants,

and

Premier Multimedia, Inc., Plaintiff–Counter–Defendant–Appellant,

v.

Auriga–Aurex, Inc., Defendant–Counter–Claimant–Appellee,

and

Sunkyong Industries Co., f/k/a Sunkyong Ltd, Sunkyong America, Inc. (New York), Sunkyong America, Inc. (Los Angeles), BASF Magnetics GMBH, EMTEC Magnetics Promedia, Inc., f/k/a Jr Pro Sales, EMTEC Magnetics GMBH, Kohap Group of Korea, Kohap Inc., EMTEC Holding GMBH, Aurex S.A. De C.V. (Auriga), TDK

Corporation, TDK Electronics Corporation, and SKM Ltd., formerly SK Magnetic Co. Ltd., Defendants–Appellees.

Docket No. 02–7687.

United States Court of Appeals,
Second Circuit.

Argued/Submitted March 13, 2003.

Decided: June 20, 2003.

Howard J. Sedran, Philadelphia, PA (Levin, Fishbein, Sedran & Berman, Eric L. Olson, Karla Gluek, Heins, Mills & Olson, P.L.C., Minneapolis, MN; Richard J. Kilsheimer, Kaplan Fox & Kilsheimer, LLP, New York, NY; and Michael J. Brickman, Richardson, Patrick, Westbrook & Brickman, LLC, Charleston, SC, of counsel), for Plaintiffs–Appellants and Plaintiff–Counter–Defendant–Appellant.

Bud G. Holman, New York, N.Y. (Kelley, Drye & Warren, LLP, of counsel), for Defendant–Appellee SKM Ltd.

Before OAKES, CABRANES and SOTOMAYOR, Circuit Judges.

PER CURIAM.

Named plaintiffs Texas International Magnetics, Inc., Crown Magnetics, Inc., and Premier Multimedia, Inc., appeal from the dismissal of defendant SKM, Ltd., from this class action antitrust suit based on lack of personal jurisdiction. Plaintiffs argue that the district court erroneously determined that it lacked personal jurisdiction over SKM and, alternately, that the court improperly denied them the opportu-

nity to conduct jurisdictional discovery on questions of both specific and general personal jurisdiction prior to making its decision. Similar to our conclusion in the companion case to this matter, *see Tex. Int'l Magnetics, Inc. v. BASF Aktiengesellschaft*, 31 Fed.Appx. 738, 2002 WL 385569 (2d Cir.2002), we agree that the plaintiffs should have been afforded an opportunity to engage in jurisdictional discovery with regard to SKM prior to the court ordering dismissal. Furthermore, we deny SKM's motion to dismiss the appeal based on events in SKM's pending bankruptcy proceeding in Korea. Accordingly, we vacate the judgment and remand to the district court.

In their complaint, plaintiffs allege that SKM, a Korean corporation, along with a number of other manufacturers and distributors of magnetic audiotape, conspired to fix the price of such tape in the United States for a period of roughly eight years, in violation of the Sherman Act, 15 U.S.C. § 1 (2002). Specifically with regard to SKM, plaintiffs alleged that it participated directly in the conspiracy, as well as indirectly, by directing the activities of employees of its United States subsidiary, SKMA, Inc.

SKM brought a motion to dismiss under Fed.R.Civ.P. 12(b)(2), arguing that the court lacked personal jurisdiction. The court granted the motion, concluding in relevant part (1) that plaintiffs had failed either to allege facts or point to facts in the record establishing that SKM was a direct participant in the price fixing activities directed at the United States such that specific personal jurisdiction extended over it; and (2) that plaintiffs had failed either to allege facts or point to facts in the record such that the continuous and systematic contacts of SKM's subsidiary, SKMA, Inc., should be imputed to it for purposes of establishing general personal jurisdiction. In dismissing SKM, however, the court failed to rule explicitly on plaintiffs' request for further discovery on the question of personal jurisdiction.

After plaintiffs filed their notice of appeal, SKM filed a motion to dismiss in this court, which we have considered along with the merits of this appeal.

### A.

▬ We review a district court's dismissal for want of personal jurisdiction *de novo*. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir.2002). On a Fed.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, plaintiff bears the burden of showing that the court has jurisdiction over the defendant. *See Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996). Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction. *Id.*

▬ We credit a plaintiff's averments of jurisdictional facts as true. *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.1990). Where plaintiff has engaged in jurisdictional discovery, but no evidentiary hearing was conducted, "the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited ... would suffice to establish jurisdiction over the defendant." *Id.*

We note, here, that the district court analyzed the question of personal jurisdiction under § 12 of the Clayton Act, 15 U.S.C. § 22 (2002), adopting the Ninth Circuit's interpretation of the provision found in *Go–Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406 (9th Cir.1989).[1] Neither

---

1. As a consequence, it did not reach the alternate questions of personal jurisdiction under

party contests on appeal the propriety of this decision.

Under the Ninth Circuit's interpretation of § 12, plaintiffs may avail themselves of § 12's worldwide service-of-process provision, which enables courts to extend personal jurisdiction over corporations to the limits permitted under the Fifth Amendment's due process clause, even if § 12's venue provision is not satisfied.[2] *Id.* at 1408–13; *accord Dee–K Enters. v. Heveafil Sdn. Bhd.*, 982 F.Supp. 1138, 1144 n. 12 (E.D.Va.1997); *Gen. Elec. Co. v. Bucyrus–Erie Co.*, 550 F.Supp. 1037, 1041–42 (S.D.N.Y.1982). The ensuing minimum contacts analysis looks to a corporation's contacts with the United States as a whole to determine if the federal court's exercise of personal jurisdiction comports with due process. *Go–Video*, 885 F.2d at 1414–15; *Bucyrus–Erie*, 550 F.Supp. at 1043; *Dee–K*, 982 F.Supp. at 1145 n. 15; *see also Dardana Ltd. v. A.O. Yuganskneftegaz*, 317 F.3d 202, 207 (2d Cir.2003) (when personal jurisdiction over foreign corporation is based on Fed.R.Civ.P. 4(k)(2)—in essence the *federal* long-arm statute—due process analysis involves contacts with United States as a whole); *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 36 (1st Cir.1999)(same); *Mariash v. Morrill*, 496 F.2d 1138, 1143 (2d Cir.1974) (when undertaking due process analysis with respect to analogous service-of-process provision of federal Securities Exchange Act—§ 27—courts look to contacts with United States as a whole).

We will assume, without deciding, that the district court's approach to § 12 is correct, given that the parties do not question it on appeal. We note, however, that there is some disagreement over whether a party first must demonstrate that § 12's venue requirement—that an antitrust suit against a corporation be brought in a district of which it is an inhabitant, in which it may be "found," or in which it transacts business—is satisfied before § 12's expansive jurisdictional provision may be invoked. *Compare Go–Video*, 885 F.2d at 1408–13 (holding that venue and service-of-process provisions of § 12 operate independently); *Daniel v. Am. Bd. of Emergency Med.*, 988 F.Supp. 127, 198–201 (W.D.N.Y.1997) (same); *Bucyrus–Erie*, 550 F.Supp. at 1041–42 (same); *Dee–K*, 982 F.Supp. at 1144 n. 12 (opining same), *with GTE New Media Servs. Inc. v. Bell-South Corp.*, 199 F.3d 1343, 1350 (D.C.Cir. 2000) (holding venue portion of § 12 must be satisfied before extraterritorial service provision can confer personal jurisdiction over a corporation); *Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 709 F.Supp. 1279, 1286–87 (S.D.N.Y.1989) (same); *Reynolds Metals Co. v. Columbia Gas Sys., Inc.*, 694 F.Supp. 1248, 1251 (E.D.Va.1988) (opining same). *See also In re Vitamins Antitrust Litigation*, 94 F.Supp.2d 26, 27 n. 3, 30 (D.D.C.2000) (questioning wisdom of D.C. Circuit's interpretation of § 12 to require that a defendant be an inhabitant of, be found in, or transact business in a forum before being subject to worldwide service of process in a multidistrict, antitrust suit, but noting it was bound by this precedent).

■■ With regard to the specific question in this case—whether SKM *has* sufficient minimum contacts with the United States to satisfy due process—we believe the district court improperly denied plain-

---

either New York's long-arm statute or Fed. R.Civ.P. 4(k)(2).

**2.** The court held that venue could be established on some other basis such as Title 28, section 1391(d), which provides that an alien may be sued in any district. *Go–Video*, 885 F.2d at 1413.

tiffs the opportunity to engage in limited discovery on the question prior to dismissing SKM. First, in both plaintiffs' complaint and materials submitted in opposition to dismissal, they point to minutes from a meeting showing that an executive of SKM was present at a meeting in Seoul in which price-fixing activities took place. For purposes of a motion to dismiss, this arguably would satisfy the "effects" test frequently used in the analysis of specific personal jurisdiction. *See Calder v. Jones,* 465 U.S. 783, 789–90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (court may exercise personal jurisdiction over defendant consistent with due process when defendant is a *primary participant in intentional wrongdoing*—albeit extraterritorially—*expressly directed at forum*). Indeed, SKM concedes that one of its executives was present at the meeting in question, but argues that the meeting was a "short culturally required courtesy meeting," in which no price-fixing discussion took place. This factual argument, however, is not proper for resolution in the context of a motion to dismiss.

Furthermore, it is not clear from the district court's order whether the court considered this specific allegation at all in its decision, given its very brief discussion of the effects test with respect to SKM. Rather, on the face of the order, it appears that the court may have overlooked the notes showing SKM's participation in the Seoul meeting at which price fixing appears to have been discussed. At the very least, then, plaintiffs are entitled to further development on this point prior to a conclusion that they have failed to make a *prima facie* showing that SKM participated directly in a conspiracy, the effects of which were purposefully directed at the United States. Remand will provide the opportunity for full consideration by the court of the meeting in Korea with regard to the question of personal jurisdiction.

■ Alternatively, even if plaintiffs could not satisfy the *Calder* "effects" test, thereby establishing specific personal jurisdiction, plaintiffs point to facts in the record in support of their claim that SKM exerted extensive control over SKMA, Inc. to the degree that SKMA's numerous contacts with the United States should be imputed to SKM for purposes of general personal jurisdiction. As the district court acknowledged, this analysis involves a multi-factor test that is very fact-specific. Given the nature of this inquiry, it was premature to grant dismissal prior to allowing discovery on plaintiffs' insufficiently developed allegations regarding the relationship between SKM and its subsidiary.

Should the district court reach this question, it may wish to consider plaintiffs' allegations of, and development through discovery of, facts establishing that SKM has complete ownership of SKMA stock; that SKM guarantees SKMA's credit arrangements with banks in the U.S.; that SKM describes SKMA as its marketing and sales arm on its website; that SKMA was simply SKM's business office in the U.S. prior to being organized into its own corporation; that, although SKM manufactures magnetic tape in Korea, it carries out sales in the U.S. through SKMA; that SKMA's sales are comprised almost exclusively of SKM's manufactured product; that there is an overlap in executive personnel between the companies, along with a frequent exchange and rotation of personnel between parent and subsidiary; that SKMA has financial reporting requirements established by SKM; and that SKM shares resources and infrastructure with SKMA.

### B.

■ SKM claims, however, that dismissal is appropriate on the alternate ground

that plaintiffs' claims against it are barred under Korean law based on principles of international comity. Specifically, SKM argues in its submissions to this court that because plaintiffs failed to file a timely notice of claims against SKM in SKM's Korean bankruptcy proceedings—initiated while the present case was pending in district court—plaintiffs' claims are barred under Korean law and we should give effect to the bar in the present proceedings. SKM bases the entirety of its argument on two affidavits submitted by its U.S. attorney, primarily recounting the history of the present case; a three-page declaration of an attorney admitted to practice in Korea in which the attorney states his interpretation of Korean bankruptcy law with regard to the present parties' situation; and a copy of the order entered by the Korean court on which SKM relies to create the bar to plaintiffs' U.S. claims. SKM does not provide any of the relevant Korean law itself.

The dearth of evidence offered by SKM prevents this court from properly considering its request for dismissal based on an issue of foreign law. While courts are not precluded from engaging in their own information gathering with regard to issues of foreign law, *see* Fed.R.Civ.P. 44.1, we do not believe it is appropriate for this court to do so in these circumstances.

Rule 44.1 provides that "[a] party who intends to raise an issue concerning the law of a foreign country shall give notice by *pleadings* or other *reasonable* written notice." *Id.* (emphasis added). The bankruptcy proceedings at issue were commenced in December 2000, and SKM claims that plaintiffs' present suit became barred by operation of Korean law as of January 13, 2001. Although commencement of the Korean bankruptcy proceedings postdated SKM's responsive pleadings in this case, the commencement *pre-dated* the district court's ruling on SKM's motion to dismiss by at least two months. Furthermore, nearly three months elapsed before the district court entered a final judgment dismissing SKM, which would allow for appeal, and yet another month elapsed before plaintiffs appealed to this court. In all of this intervening time, SKM failed to raise the issue in the district court, or even bring the Korean bankruptcy proceedings to its attention. Instead, it waited almost a month after plaintiffs' notice of appeal before bringing its motion to dismiss in *this* court. In other words, SKM elected not to take advantage of an opportunity to create a proper record for review by this court. Furthermore, SKM offers no explanation for the extensive delay in raising this issue of foreign law or for its failure to raise it in the district court proceedings. SKM has failed to demonstrate that it is entitled to dismissal based on Korean law, and we decline to allow SKM an opportunity to further develop the record because of its failure to comply with Fed.R.Civ.P. 44.1's requirement of reasonable notice. We therefore hold that SKM is barred from raising the Korean proceedings as a defense.

In conclusion, the judgment of the district court dismissing SKM for lack of personal jurisdiction is vacated and the matter remanded. SKM's motion to dismiss is denied.