MIZLOU TELEVISION NETWORK, INC., Plaintiff,

v.

NATIONAL BROADCASTING COMPANY, et al., Defendants.

No. 84–1613.

United States District Court, District of Columbia.

Nov. 30, 1984.

Wayne Hartke, Vance Hartke, Hartke & Hartke, Falls Church, Va., for plaintiff.

Hugh P. Morrisson, Jr., Cahill, Gordon & Reindel, Washington, D.C., for defendants NBC, Arthur Watson and Jeff Cokin.

Donald Zeifang, Baker & Hostetler, Washington, D.C., for defendants Fla. Citrus Sports Ass'n, Sam Hines, Charles Rohe, Vernon Hinely & Fla. Citrus Com'n.

J. Hardin Peterson, Jr., Peterson, Myers, Craig, Crews, Brandon & Mann, P.A., Lakeland, Fla., pro hac vice per Ct. order for Fla. Citrus Com'n.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

This action involves a dispute over rights to televise the 1984 Florida Citrus Bowl (formerly the Tangerine Bowl), a college football game to be played on December 22 of this year. Plaintiff Mizlou Television Network, Inc. ("Mizlou") raises various federal antitrust and pendent state law claims in connection with the decision of defendant Florida Citrus Sports Association to grant the broadcast rights for this year's Citrus Bowl to defendant National Broadcasting Company. For the reasons that follow, all of plaintiff's claims against each defendant must be dismissed.

*Procedural Posture*

Plaintiff filed this action on May 23, 1984, alleging a "contract, combination and conspiracy in restraint of trade" in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (Complaint ¶ 7), an attempt to monopolize and a conspiracy to monopolize (Complaint ¶ 8) and perhaps monopolization (Complaint ¶ 14), all in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, a contract "to substantially lessen competition or tend to create a monopoly" in violation of Section 3 of the Clayton Act, 15 U.S.C. § 14, and breach of contract and tortious interference with contract (Complaint, ¶¶ 13, 14). Named as defendants to the complaint are:

(1) National Broadcasting Company ("NBC").

(2) Arthur Watson, President, NBC Sports.

(3) Jeffrey Cokin, Director of Sports Contract Negotiations, NBC Sports.

(4) Florida Citrus Sports Association, Inc. ("FCSA").

(5) Sam Hines, member of the FCSA Executive Committee.

(6) Charles Rohe, member of the FCSA Executive Committee.

(7) Vernon Hinely, member of the FCSA Executive Committee.

(8) Florida Citrus Commission.

On July 9, 1984, the NBC defendants (NBC, Watson and Cokin), the FCSA defendants (FCSA, Hines, Rohe and Hinely) and the Florida Citrus Commission filed separate motions to dismiss under Federal Rule of Civil Procedure 12(b). Three weeks after those motions ripened, plaintiff filed its October 1, 1984 "motion for declaratory relief" seeking an expedited hearing and resolution of "the issue of rights to televising the bowl game." Plaintiff's Motion at 3. At the oral hearing on all motions held November 2, 1984, plaintiff confirmed that it seeks immediate consideration of its pendent state law claims, but acknowledged that it did not expect the antitrust claims to be decided on the merits before the December 22 Citrus Bowl game.

Plaintiff's sudden demand for expedition is somewhat puzzling. Mizlou's chief executive learned of the FCSA's agreement with NBC in August 1983 at the latest, yet

devoted fully eight months to "soulsearching" before deciding to bring this action.[1] Once in court, plaintiff stipulated to extensions of filing deadlines requested by defendants and sought an extension of its own. Furthermore, plaintiff's complaint on its face seeks monetary relief only—there is no request in that pleading that the Court enjoin any conduct by any defendant before any fixed date.

More fundamentally, even if plaintiff's subsequent pleadings are viewed as amending the complaint to state a claim for injunctive relief, the merits of plaintiff's state law claims cannot be considered without first addressing issues raised by defendants in their motions to dismiss. Defendants assert, among other things, that defendant Florida Citrus Commission is immune from suit in this Court, that this Court lacks personal jurisdiction over six of the eight defendants, and that plaintiff's allegations fail to state an actionable claim under applicable state law or the federal antitrust statutes, the foundation of this Court's pendent jurisdiction over plaintiff's state law claims. Until those issues are resolved, consideration of the merits of the pendent claims would be premature. *See Financial General Bankshares, Inc. v. Metzger,* 680 F.2d 768, 773 (D.C.Cir.1982) (if federal claims are dismissed at an early stage of litigation, pendent state claims should be dismissed as well).

*Factual Background*

Upon consideration of defendants' motions to dismiss for jurisdictional and pleading deficiencies, the Court must accept as true the factual allegations set forth in the complaint. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Those allegations, supplemented by documents introduced by plaintiff at the November 2, 1984 hearing, state the following:

Mizlou and FCSA, the successor corporation of the Tangerine Sports Association, Inc. ("TSA"), are parties to a contract entitled "Tangerine Bowl Television Rights Agreement" and dated November 12, 1980. Pursuant to that agreement, TSA granted to Mizlou the exclusive broadcast television rights to the 1980, 1981, 1982 and 1983 Tangerine/Citrus Bowls. Clause 15 of the Mizlou/TSA contract provided that TSA/FCSA could offer the right to cover the 1984, 1985 and 1986 games to competing broadcasters, but reserved to Mizlou the opportunity to match or better the offers of third parties under certain circumstances.[2]

By letter dated August 9, 1983, defendant FCSA, through defendant Hines, informed Mizlou of existing offers (including one by defendant NBC) made to FCSA for future television coverage of the Citrus Bowl, beginning in 1984. Defendant's letter stated that FCSA was submitting the list of offers "as required by [its] contract with Mizlou which runs through the 1983 game," and further stated that "by previous agreement Mizlou has ten (10) days in which to exercise first right of refusal."

---

**1.** Transcript of Nov. 2, 1984 hearing at 19.

**2.** The full text of Clause 15 reads as follows:
"15. OPTION TO RENEW
"Commencing on July 1, 1983, TSA will negotiate with MTN [Mizlou] and other third parties with respect to the TV broadcast rights to the games for 1984, 1985 and 1986. If by December 31, 1983, the parties hereto have not reached an agreement in regard to such rights, TSA may offer such rights to third persons, provided that TSA shall not offer such rights upon terms and conditions less favorable to TSA than those which MTN shall have, in writing, last previously offered to TSA (whether prior to or after December 31, 1983) unless TSA shall have first made available to MTN, bona fide offers from other companies, in reasonable detail and in writing, and afforded MTN a period of ten (10) business days within which to match or better such offers. Any such offers shall be deemed to be bona fide only if the terms thereof are susceptible to ready reduction to a determinable sum of money.
"If no agreement has been reached by TSA with respect to the TV broadcast rights to the games for 1984, 1985 and 1986, with MTN or any other company (excluding NBC, CBS or ABC) by April 1, 1984, then MTN's option for 1984, 1985 and 1986 is automatically renewed as of that date and time, under the terms and conditions of the agreement applicable for the 1983 Game, plus ten (10%) percent."
Exh. A to Affidavit of Jeffrey Cokin.

PX–2. On August 17, 1984, plaintiff responded that it had "elect[ed] to exercise [its] option to renew the agreement on the same terms and conditions offered by NBC Television Network" and stated its intention to submit to FCSA a formal agreement covering all points in the NBC offer. PX–3. Through its attorney, FCSA conveyed by telegram the following reply (PX–1):

> On behalf of Florida Citrus Sports Association, Inc., we hereby advise you that the 10-day period within which you requested an opportunity to respond to other offers has now expired. It is our opinion that paragraph 15 of your contract with TSA does not confer upon you a right of first refusal under these circumstances. Nonetheless, pursuant to subsequent correspondence, it was thought to be appropriate to inform you, of the NBC offer. In our opinion, your offer does not match the value of the NBC offer. Since 10 days have passed since you have been informed of the NBC offer, it is our opinion that Florida Citrus Sports Association has no further obligations to Mizlou for 1984 and thereafter.

Subsequently, FCSA through defendant Hinely and NBC through defendant Cokin entered into an agreement whereby FCSA granted to NBC the rights to broadcast the 1984 Citrus Bowl and options to renew those rights in 1985 and 1986, under certain conditions.[3] As a result of that agreement, plaintiff alleges, FCSA received from the Florida Citrus Commission a "financial donation" which had been contingent upon NBC obtaining television rights to the Citrus Bowl games.

Against that background, plaintiff alleges that all of the defendants, including the designated officials of NBC and FCSA, acted in concert to bring about a breach of plaintiff's asserted contract right to match or better NBC's offer to cover the 1984, 1985 and 1986 Citrus Bowl games.[4] On a grander scale, plaintiff claims that the FCSA/NBC agreement is a product of NBC's "dominance of power and control" in the market for college football bowl games. Plaintiff depicts a scenario in which "smaller competitors" in that market, including Mizlou, develop bowl games to the point of significant profitability, only to be displaced when NBC expresses interest in televising the events. Complaint ¶¶ 9, 18. In this instance, plaintiff claims, NBC and the other named defendants joined forces to replace Mizlou with NBC as Citrus Bowl broadcaster, with the intent and effect of impairing competition for bowl game television rights and creating a monopoly in the market for those rights. Complaint ¶¶ 7–10, 18. Before considering whether these allegations state any actionable claim, the jurisdictional issues raised by the various defendants shall be first addressed.

*Eleventh Amendment*

■ Among the Florida Citrus Commission's several arguments is that as an arm of the State of Florida, it is not subject to the jurisdiction of this or any other federal district court. The Commission relies upon the recent Supreme Court decision of *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984):

> " 'An unconsenting state is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.' [Citations omitted] ... [I]n the absence of consent, a suit in which the state or one of its agencies is named as the defendant is proscribed by the Eleventh Amendment."

---

**3.** Under the agreement, NBC also obtained options to renew the broadcast rights for the 1987 and 1988 games. The 1987 and 1988 options are not relevant to this complaint.

**4.** With respect to the individual defendants, plaintiff alleges that:

Defendant Hines signed the August 9, 1983 letter from FCSA to plaintiff (Complaint ¶ 4);

Defendant Rohe made statements to the effect that he would make life miserable for Mizlou (Complaint ¶ 13); and

Defendants Hinely and Cokin signed the FCSA/NBC contract (Complaint ¶ 16).

Plaintiff attributes no specific action to defendant Watson.

104 S.Ct. at 908. Under Florida law, the Florida Citrus Commission is a twelve-man board within the Florida Department of Citrus which serves as the head of that department. The Department of Citrus is, in turn, a unit of the executive branch of government of the State of Florida. Fla. Stat. §§ 601.04, 20.04 (1983). Plaintiff does not dispute that by virtue of this statutory organizational structure, the Florida Citrus Commission is a sub-unit of the State of Florida. Accordingly, under *Pennhurst,* the Commission is not amenable to suit in this Court and must be dismissed as a defendant.

### In Personam Jurisdiction

■ Six of the seven remaining defendants challenge plaintiff's assertion that this Court may exercise personal jurisdiction over them. Due process concerns delineate the extent of this Court's jurisdiction not only under the United States Constitution but also under the District of Columbia statute permitting an exercise of long-arm personal jurisdiction over a nonresident defendant who, directly or by an agent, "transact[s] any business in the District of Columbia." D.C.Code § 13–423(a)(1) (1981); *Mitchell Energy Corp. v. Mary Helen Coal Co.,* 524 F.Supp. 558, 563 (D.D.C.1981); *see also Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.,* 647 F.2d 200 (D.C.Cir.1981); *Mouzavires v. Baxter,* 434 A.2d 988 (D.C.App.1981), *cert. denied,* 455 U.S. 1006, 102 S.Ct. 1643, 71 L.Ed.2d 875 (1982).[5]

Familiar principles of due process dictate that an out-of-state defendant (a description fitting all defendants to this action except NBC, which maintains a permanent office in the District of Columbia) may be haled into court only if there exist

> 'certain minimum contacts' [between the defendant and the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair place and substantial justice.'

*International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citations omitted); *accord Helicopteros Nacionales de Colombia, S.A. v. Hall,* —— U.S. ——, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); *Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291–92, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). In judging minimum contacts, a court "properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Keeton v. Hustler Magazine, Inc.,* —— U.S. ——, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984), *quoting Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *see also Calder v. Jones,* —— U.S. ——, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984). Even in the absence of connections between the subject matter of the controversy and the forum state, jurisdiction may be based solely on a nonresident defendant's "continuous and systematic general business contacts" with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 104 S.Ct. at 1873; *Keeton v. Hustler Magazine, Inc.,* 104 S.Ct. at 1481.

Plaintiff has alleged no business contacts of a continuous and systematic nature linking FCSA or any of the individual defendants with this jurisdiction. Furthermore, factual support for any connection between those defendants and the District of Columbia relating to the subject matter of this controversy is scanty at best. Plaintiff has argued that unspecified "critical acts in furtherance of the conspiracy and tort" occurred in the District of Columbia, basing that argument on a supposed "admission" that "acts of review and decisionmaking concerning the terms of the NBC contract" took place here. The sources of that "admission"—unrebutted affidavits of defendants Cokin and Rohe—in fact assert that all contract negotiations between NBC and FCSA were conducted either by telephone between Cokin in New York City and Hines and Rohe in Orlando, Florida or in meetings held in New York or Orlando.

---

**5.** No other provision of the District of Columbia long-arm statute is applicable to these facts.

*See* D.C.Code § 13–423 (1981).

Affidavit of Jeffrey.Cokin ("Cokin Aff.") at ¶ 4, Affidavit of Charles Rohe ("Rohe Aff.") at ¶ 4. Through those negotiations, NBC and FCSA reached an agreement in principle, the terms of which are essentially unchanged in the final contract, which was drafted in New York and executed in Florida. Cokin Aff. at ¶ 5, Rohe Aff. at ¶ 6.

The *only* link between the NBC/FCSA contract, defendants and the District of Columbia is through a nonparty law firm. Defendant FCSA receives legal counsel from the Orlando office of a firm with offices in five cities, including Washington, D.C. The firm's communications law specialist practices from the District of Columbia office; consequently, on communications matters FCSA consults that specialist here. After the negotiations between NBC and FCSA had been completed and an agreement had been reached, the District of Columbia attorney, on behalf of FCSA, contacted Cokin in New York on six to twelve occasions by telephone or letter and together they reduced the NBC/FCSA agreement to writing. In addition, the attorney mailed the telegram (PX–1) informing Mizlou that FCSA recognized no further obligations to Mizlou for 1984 and thereafter.

Without more, these actions of the District of Columbia attorney do not justify an assertion of personal jurisdiction over FCSA and the individuals who negotiated, signed and/or approved the NBC/FCSA contract. The core of plaintiff's complaint is the alleged substitution of NBC for Mizlou as the holder of rights to televise the 1984 Citrus Bowl and options for subsequent games. That alleged substitution, as charged, took place by the actions of the defendants, not the lawyer—that is, by the decision of NBC (in New York) to extend an offer for the broadcast rights to FCSA coupled with the decision of FCSA (in Florida) to accept that offer. The location of the attorney when those decisions were made is immaterial, as plaintiff does not assert that he played any part whatsoever in the actual decisionmaking process. The agreement was neither negotiated nor executed and will not be performed in the District of Columbia, and the few communications from the District lawyer on behalf of FCSA to NBC or Mizlou will not draw the nonresident defendants within the sphere of this Court's jurisdiction. *See Mitchell Energy Corp. v. Mary Helen Coal Co., supra,* 524 F.Supp. 558; *see generally Cockrell v. Cumberland Corp.,* 458 A.2d 716 (D.C.App.1983) (even calls and letters placed rather than received by out-of-state defendant do not satisfy long-arm statute's "transacting business" test, which is jurisdictionally coextensive with due process analysis).

Finally, the mere fact that FCSA retained counsel in the District of Columbia will not confer personal jurisdiction over that or any other defendant in an action not arising from the lawyer/client relationship. Were this an action by the attorney for recovery of fees, defendant's solicitation of a District of Columbia attorney would be jurisdictionally significant. *See Mouzavires v. Baxter, supra,* 434 A.2d 988; however, plaintiff here cannot claim that the fortuitous relationship between the Orlando-based FCSA and an expert in its counsel's District of Columbia office constitutes a "purposeful availment" of the benefits and privileges of this forum *vis-a-vis this litigation* such that any of these defendants could reasonably anticipate being haled before this Court. *See generally Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); *see also Transamerican Steamship Corp. v. Somali Democratic Rep.,* 590 F.Supp. 968, 977 (D.D.C.1984).

Plaintiff's meager allegations in support of personal jurisdiction do not begin to establish the requisite minimum contacts with the District of Columbia. Plaintiff does not challenge the accuracy of the jurisdictional facts submitted by defendants, and in fact relies upon them to construct the arguments rejected above. Under these circumstances, plaintiff's request to conduct discovery on this issue shall be denied, *see Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 788 (D.C.Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 2399,

81 L.Ed.2d 355 (1984), and, in accordance with due process, plaintiff's claims against defendants FCSA, Watson, Cokin, Rohe, Hines and Hinely shall be dismissed for lack of personal jurisdiction.

### Claims Against NBC

#### (a). Antitrust Claims

■ Remaining before the Court are plaintiff's antitrust and state law claims against NBC. Although the complaint is replete with the vocabulary of antitrust law, the facts alleged, even accepted as true, do not state a claim under Sections 1 or 2 of the Sherman Act, 15 U.S.C. §§ 1, 2 ("Sections 1 and 2"), or Section 3 of the Clayton Act, 15 U.S.C. § 14 ("Section 3").

Plaintiff's Section 1 claim rests on the proposition that the NBC/FCSA contract constitutes a contract, combination or conspiracy in restraint of trade. To distinguish this claim from a mere business tort, plaintiff must make a sufficient allegation of anti-competitive effects resulting from NBC's actions; absent injury to *competition*, injury to plaintiff as a *competitor* will not satisfy this pleading requirement. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977); *Brown Shoe Co. v. United States*, 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962); *Havoco of America, Ltd. v. Shell Oil Co.*, 626 F.2d 549, 554 (6th Cir.1980). Furthermore, unlike some horizontal relationships among competitors, the *vertical* arrangement between NBC and FCSA described by plaintiff cannot be characterized as *per se* unlawful, *see Continental T.V., Inc. v. G.T.E. Sylvania, Inc.*, 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977); *Transource International, Inc. v. Trinity Indus., Inc.*, 725 F.2d 274 (5th Cir.1984); but instead must be analyzed under a "rule of reason": to state an actionable claim, plaintiff must allege an *unreasonable* restraint on competition, *see National Society of Professional Engineers v. United States*, 435 U.S. 679, 688, 98 S.Ct. 1355, 1363, 55 L.Ed.2d 637 (1978); *Transource International, supra.* Thus, the legality of defendant's conduct turns on the conse-quences of that conduct in the relevant market. *See Monsanto Co. v. Spray-Rite Service Corp.*, — U.S. —, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984); *Havoco of America*, 626 F.2d at 554.

Despite conclusory assertions that NBC's conduct will restrain competition, plaintiff has alleged no specific impact on competition in any particular market. At one point in the complaint, plaintiff challenges NBC's conduct only as it affects competition for television rights to the Bluebonnet Bowl, Holiday Bowl, Hall of Fame Bowl and Citrus Bowl, only 4 of the 21 college football bowl games scheduled to take place at the end of the 1984 season. Complaint ¶ 18. That market definition is unduly narrow, as it excludes rights to numerous other bowl games which are "reasonably interchangeable" from the broadcaster's standpoint. *See Brown Shoe Co. v. United States*, 370 U.S. at 325, 82 S.Ct. at 1523; *Southern Pacific Communications Co. v. American Telegraph and Telephone Co.*, 556 F.Supp. 825 (D.D.C.1983), *aff'd.* 740 F.2d 980 (D.C. Cir.1984); *Gianna Enterprises v. Miss World (Jersey) Ltd.*, 551 F.Supp. 1348, 1354 (D.N.J.1982) (rejecting market definition which included only international beauty pageants but excluded state and national pageants).

Even accepting for present purposes a broader market definition of "collegiate football bowl games", *see* Complaint ¶¶ 8, 10, 18, the Court finds no facts to support plaintiff's bald claim of anticompetitive impact—plaintiff has alleged no specific and demonstrable *market* effect of NBC's contract to cover the Citrus Bowl, and plaintiff's own loss of business with FCSA will not suffice. *See Gianna Enterprises v. Miss World (Jersey) Ltd., supra; see also Car Carriers, Inc. v. Ford Motor Co.*, 1984–2 CCH Trade Cases ¶ 66,220 (7th Cir. 1984); *Havoco of America*, 626 F.2d at 558. The Sherman Act outlaws practices that make markets less competitive and thereby hurt the people transacting with the firms in those markets. *See, e.g., Reiter v. Sonotone Corp.*, 442 U.S. 330, 343, 99 S.Ct. 2326, 2333, 60 L.Ed.2d 931 (1979).

"To injure, even to cripple or destroy, one or two competitors in a market will not, if there are many competitors in that market, have much if any effect on consumers or anyone else" besides the injured competitor. *Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648 (7th Cir.1984).

For similar reasons, plaintiff's Section 2 claims of monopolization, attempt to monopolize, and conspiracy to monopolize must be dismissed. Plaintiff makes the conclusory assertion that the NBC/FCSA agreement is a "consequence of [NBC's] dominance of power and control", Complaint ¶ 9, but offers not a single fact to document NBC's supposed actual or probable market power. The omission is fatal—an essential element of a monopolization claim is "the possession of monopoly power in the relevant market", *United States v. Grinnell Corp.*, 384 U.S. 563, 570, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778 (1966); that is, a Section 2 plaintiff must allege that the defendant has the power to control price and exclude *competition generally* in the relevant market. *Id.* at 571, 86 S.Ct. at 1704; *Southern Pacific Communications Co.*, 740 F.2d at 1000. Even a claim of attempt to monopolize requires a plaintiff to plead facts alleging a dangerous probability that, if unchecked, the defendant's conduct will ripen into monopolization. *Transource International, Inc. v. Trinity Indus., Inc., supra; Merit Motors, Inc. v. Chrysler Corp.*, 417 F.Supp. 263 (D.D.C. 1976), *aff'd.* 569 F.2d 666 (D.C.Cir.1977). Furthermore, a plaintiff raising claims of attempt or conspiracy to monopolize must allege a specific intent to monopolize on the part of the defendant. *See e.g., Arthur S. Langenderfer, Inc. v. S.E. Johnson*, 729 F.2d 1050 (6th Cir.1984).

Plaintiff's complaint recites the proper conclusory verbiage but suffers from a paucity of facts. It does not identify the owner(s) of rights to any bowl game except the Citrus Bowl, nor does it contain a shred of data concerning NBC's market position relative to other television broadcasters, including the competing major networks. Absent *any* facts even hinting at an actual, imminent or intended concentration of

*market* power in NBC alone, plaintiff's allegations do not state a claim under Section 2. *See generally Havoco of America*, 626 F.2d at 558 (plaintiff's "naked statement" that defendants conspired to establish one supplier as "dominant marketer" of goods, without supporting factual allegations, did not survive 12(b)(6) motion to dismiss).

Finally, the minimal factual allegations of plaintiff's complaint provide no basis for plaintiff's claim under Section 3 of the Clayton Act. Section 3 prohibits certain exclusive dealing or tied sale arrangements which "substantially lessen competition or tend to create a monopoly." 15 U.S.C. § 14. Even if the rights to broadcast the 1984 Citrus Bowl may be considered a "commodity" within the meaning of this provision, plaintiff has failed to allege facts, as distinguished from legal conclusions, indicating any decrease in competition in the market for those rights. The only effect of the NBC/FCSA contract discernible from the complaint is that NBC will cover the Citrus Bowl and Mizlou will not. Any tendency toward monopoly would depend on NBC's ability to drive out not only plaintiff, but all or nearly all other competitors. No facts submitted by plaintiff adumbrate such a threat, and from the face of the complaint a Section 3 injury to competition is not self-evident. *See generally Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. at 488, 97 S.Ct. at 697 (antitrust statutes—including the Clayton Act—guard against injury to competition generally, not mere injury to competitors).

In sum, the gist of this complaint is that Mizlou—not the market—has been wronged. Although we do not decide this today, it is, of course, possible that plaintiff may have a cognizable claim under tort or contract; however, the allegations before this Court simply cannot rise to the level of federal antitrust claims. Liberal use of the language of antitrust will not transform the cause of action—"when stripped to its essential[s], the complaint does no more than state plaintiff's commercial disappointment", a matter grounded in state law. *See Car Carriers, Inc. v. Ford Motor*

*Co., supra, quoting Dunn & Mavis, Inc. v. Nu-Car Driveaway, Inc.,* 691 F.2d 241, 245 (6th Cir.1982); *see also Sutliff, Inc. v. Donovan Companies, Inc.,* 727 F.2d at 654.

### (b). *Pendent Claims*

In light of the prompt dismissal of plaintiff's federal antitrust claims against NBC, principles of comity and federalism support dismissal of plaintiff's pendent state claims as well. *See Financial General Bankshares, Inc. v. Metzger,* 680 F.2d at 772. The interests underlying the doctrine of pendent jurisdiction—"judicial economy, convenience, and fairness to litigants", *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *see also Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970)—would not be served by this Court's retention of plaintiff's state law claims, inasmuch as this litigation has not progressed beyond the initial pleading and dispositive motions. *See Financial General Bankshares, Inc., supra.*

In accordance with the above discussion, it is, by the Court, this 30th day of November, 1984

ORDERED that:

1. Plaintiff's claims against defendant Florida Citrus Commission are dismissed in accordance with the Eleventh Amendment;

2. Plaintiff's claims against defendants Arthur Watson, Jeffrey Cokin, Florida Citrus Sports Association, Sam Hines, Charles Rohe and Vernon Hinely are dismissed for lack of personal jurisdiction;

3. Plaintiff's claims against defendant National Broadcasting Company under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and Section 3 of the Clayton Act, 15 U.S.C. § 14, are dismissed for failure to state a claim upon which relief can be granted; and

4. Plaintiff's pendent state law claims against defendant National Broadcasting Company are dismissed in accordance with principles of federalism and comity.

This cause stands dismissed.