Charles P. **DEEM**, individually, and Madison Associates, Inc., Plaintiffs,

v.

**LOCKHEED CORPORATION;** Lawrence O. Kitchen; H.T. Bowling; Glenn T. Williamson; Stephen H. Wagner; Joseph G. Twomey; Metier Management Systems Companies; Patrick Durbin; Robin W.I. Lodge; and Does I through X, Defendants.

No. 87 Civ. 7017 (JMC).

United States District Court, S.D. New York.

Oct. 6, 1989.

---

Matthew C. Gruskin, New York City, for plaintiffs.

Joseph A. Post, Rogers & Wells, New York City, for defendants.

## MEMORANDUM AND ORDER

CANNELLA, District Judge.

Defendants' motion to dismiss for lack of personal jurisdiction is denied, without prejudice. Fed.R.Civ.P. 12(b)(2). Defendants' motion to dismiss for failure to state a claim is granted in part and denied in part. Fed.R.Civ.P. 12(b)(6). Plaintiffs' cross-motion to amend is granted in part and denied in part. Fed.R.Civ.P. 15(a). Defendants' motion to strike is denied. Fed.R.Civ.P. 12(f).

## BACKGROUND

In 1985, defendant Lockheed Corporation ["Lockheed"] acquired five separate but affiliated corporations known as Metier Management Systems Companies ["Metier"], for a sum of approximately $127 million. Plaintiffs Madison Associates, Inc. and its president, Charles P. Deem, claimed that they had entered into an oral finder's fee contract with Lockheed and that pursuant to this contract they had "introduced" Metier to Lockheed. Thus, plaintiffs maintained that as a result of the acquisition they were entitled to 1% finder's fee of $1.27 million.[1] Lockheed refused to pay the finder's fee, claiming that it did not

enter into a finder's fee contract with plaintiffs and that even if it did, Lockheed's consideration of Metier as an acquisition candidate did not result from any effort by plaintiffs.

Thereafter, plaintiffs commenced the instant action against Lockheed and Metier. Also named as defendants are Joseph G. Twomey, Stephen H. Wagner, Harold T. Bowling, Glenn T. Williamson and Lawrence O. Kitchen, all employees of Lockheed [collectively "the Lockheed employee defendants"]. In addition, two former Metier officers, Patrick Durbin and Robin W.I. Lodge, are named as defendants.

Plaintiffs' complaint includes claims for (1) violation of federal and state antitrust law (counts one through three); (2) violation of the Racketeer Influenced and Corrupt Organizations Act ["RICO"] (counts four through seven); (3) breach of contract (count eight and eleven); (4) unjust enrichment (count nine); (5) conspiracy to induce breach of contract (count ten); (6) fraud (counts twelve and thirteen); and (7) "unjust dismissal" (count fourteen).

The Lockheed employee defendants now move to dismiss all claims against them on the grounds of lack of jurisdiction over the person, Fed.R.Civ.P. 12(b)(2), and failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). They also move to strike certain allegations from the complaint. Fed.R.Civ.P. 12(f). Defendants Durbin and Lodge join in the motions, with the exception of the motion to strike.[2] Plaintiffs oppose defendants' motions and move to amend the complaint. Fed.R.Civ.P. 15(a).

## DISCUSSION

I. *Personal Jurisdiction*

■ Plaintiffs must ultimately establish personal jurisdiction over defendants by a

---

1. Plaintiffs allege that they are "intermediary finders," a term which the Complaint defines as "a person or entity which scouts the business and corporate community to locate companies interested either in acquiring or being acquired or merged with another company; and who, upon finding same, then introduces the respective acquiring, selling, or merging companies to

each other for that stated purpose...." Complaint, ¶ 20(a).

2. Durbin and Lodge also moved to dismiss on the ground of insufficiency of service of process, Fed.R.Civ.P. 12(b)(5), but subsequently withdrew the motion. Their request for an award of costs in making the motion is denied.

fair preponderance of the credible evidence. *See Cutco Indus. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986) (citing *Marine Midland Bank N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981)). However, where the Court, as in the instant case, chooses to rely on pleadings and affidavits—instead of holding an evidentiary hearing—plaintiffs' need only make a prima facie showing that jurisdiction exists. *See Cutco,* 806 F.2d at 364. Moreover, in the absence of an evidentiary hearing, "all pleadings and affidavits are construed in the light most favorable to plaintiff, and where doubts exist, they are resolved in plaintiff's favor." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985) (citing cases); *see Cutco,* 806 F.2d at 365.

"[B]efore a court may exercise personal jurisdiction over a defendant, there must be ... a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant." *Omni Capital Int'l v. Rudolf Wolff & Co.,* 484 U.S. 97, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987). In a federal action, Rule 4 of the Federal Rules of Civil Procedure governs service of process. Under Rule 4(e) "a federal court normally looks either to a federal statute or to the long-arm statute of the State in which it sits to determine whether a defendant is amenable to service...." *Omni,* 108 S.Ct. at 410; *see also Soltex Polymer Corp. v. Fortex Indus., Inc.,* 590 F.Supp. 1453, 1459 (E.D.N.Y.1984) ("[I]n a typical federal action a nonresident defendant may be served in the manner prescribed by federal statutes ... or in the manner prescribed by the State rules of service.") (footnote omitted), *aff'd on other ground,* 832 F.2d 1325 (2d Cir.1987).

■ The Lockheed employee defendants move to dismiss, arguing that neither federal nor state law provide a basis for personal jurisdiction. RICO, however, authorizes nationwide service of process. *See* 18

U.S.C. § 1965(d). As the Court finds that plaintiffs have pleaded a valid RICO claim against the Lockheed employee defendants, *see infra,* personal jurisdiction as to those defendants is proper. *See Soltex,* 590 F.Supp. at 1458.

■ Defendants Durbin and Lodge also move to dismiss, claiming that neither the relevant federal statutes nor New York law provide a proper basis for personal jurisdiction. Both Durbin and Lodge live and work in England and were served with the summons and complaint in England. Durbin and Lodge state that they never met in New York with plaintiffs and never came to New York in connection with the acquisition negotiations between Lockheed and Metier. *See Declaration of Patrick Durbin and Declaration of Robin W.I. Lodge,* 87 Civ. 7017 (JMC) (S.D.N.Y. Feb. 29, 1988).

Plaintiffs do not contend that RICO or the antitrust laws provide a basis for foreign service of process over Durbin and Lodge. *See Soltex,* 590 F.Supp. at 1460 (discussing RICO); *Pocahontas Supreme Coal v. National Mines Corp.,* 90 F.R.D. 67, 72 (S.D.N.Y.1981) (discussing antitrust laws). Plaintiffs contend, however, that Durbin and Lodge are amenable to jurisdiction under the New York long-arm statute, and thus, that foreign service of process is proper.[3]

Under the New York long-arm statute, N.Y. CPLR § 302, the cause of action sued upon must "arise out of" the nondomiciliary's New York contacts. *See Cutco,* 806 F.2d at 365; *Nordic Bank PLC v. Trend Group, Ltd.,* 619 F.Supp. 542, 567 (S.D.N.Y.1985). Plaintiffs, however, have failed to present prima facie evidence that Durbin and Lodge themselves engaged in New York activities which were related to Lockheed's acquisition of Metier.[4]

---

**3.** Under New York law, a person subject to jurisdiction under the state long-arm statute may be served outside the state in the same manner as that person is served inside the state. *See* N.Y. CPLR § 313.

**4.** To the extent that plaintiffs argue that jurisdiction is premised on N.Y. CPLR § 302(a)(3), plaintiffs have failed to make a prima facie showing that the requirements of §§ 302(a)(3)(i) or 302(a)(3)(ii) have been satisfied.

■ In the alternative, plaintiffs argue that Durbin and Lodge are subject to long-arm jurisdiction through the New York activities of their agent, Merrill Lynch Capital Markets ["Merrill Lynch"], which acted as the investment banker for Metier during the Lockheed acquisition. Complaint, ¶ 19. Section 302(a) expressly provides that a nondomiciliary may commit a tortious act in New York "through an agent." In order to establish agency for the purpose of § 302(a) plaintiff must prove "that the alleged agent acted in New York for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal." *Grove Press, Inc. v. Angleton,* 649 F.2d 121, 122 (2d Cir.1981) (citing cases).

Durbin and Lodge do not dispute plaintiffs' claim that Merrill Lynch was acting as their agent during the Metier acquisition. However, Durbin and Lodge argue that plaintiffs have not made a prima facie showing that Merrill Lynch engaged in any conduct in New York out of which plaintiffs' cause of action arose. Deem, in his affidavit in opposition to the motion to dismiss states that

> Durbin expressed interest in Metier merging with or being acquired by Lockheed and referred me to Merrill Lynch, Metier's investment banker, to pursue the matter. I called Merrill Lynch at the number given me by Durbin and advised Merrill Lynch of my role as an intermediary finder for Lockheed and that Lockheed was interested in acquiring Metier, and was assured that the matter would be pursued with Metier and Lockheed, if appropriate.
>
> \* \* \* \* \* \*
>
> I relied ... upon the representations ... by ... Merrill Lynch that (a) either Metier in fact was not pursuing a merger or acquisition at that time, or (b) that if such merger/acquisition with Lockheed were to be pursued, I would be kept informed and advised, since I had clearly introduced each to the other and had made my position known to all parties.

Affidavit of Charles P. Deem, ¶¶ 15, 17, 87 Civ. 7017 (JMC) (S.D.N.Y. Apr. 5, 1988).

On a motion to dismiss for lack of personal jurisdiction, "all pleadings and affidavits are construed in the light most favorable to plaintiff, and where doubts exist, they are resolved in plaintiff's favor." *Hoffritz,* 763 F.2d at 57 (citing cases). The Court finds that plaintiffs' affidavit in opposition presents sufficient prima facie evidence to defeat the motion of Durbin and Lodge at this stage of the proceedings. Thus, the motion to dismiss for lack of personal jurisdiction is denied, without prejudice to its renewal before or at trial. *See Marine Midland Bank N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981) (eventually plaintiff must establish jurisdiction by a fair preponderance of the credible evidence).

## II. *Motion to Amend*

Plaintiffs move to amend the complaint to make minor clarifications and additions of fact and to add a new count for violation of federal antitrust law. Defendants oppose the motion on the ground that the complaint, even as amended, would not survive a motion to dismiss.

■ Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a complaint "shall be freely given when justice so requires." However, leave to amend should not be granted where the complaint as amended could not survive a motion to dismiss. *See S.S. Silberblatt, Inc. v. East Harlem Pilot Block,* 608 F.2d 28, 42–43 (2d Cir.1979).

The Court finds that plaintiffs' proposed amendments will not prejudice defendants. The only possible reason for denying the motion to amend is that the amended complaint would not survive a motion to dismiss. The Court, therefore, will consider the proposed amended complaint ["amended complaint"] when deciding defendants' motions to dismiss.[5] Thus, the motion to amend is granted to the extent that it sur-

---

**5.** Considering the motions in this posture will not prejudice defendants because they ad-

dressed the amended complaint in briefing the motions to dismiss.

vives the motions to dismiss. Fed.R.Civ.P. 15(a).

### III. *Motions to Dismiss*

On a motion to dismiss, a court must assume that the allegations contained in the complaint are true. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Furthermore, a complaint should not be dismissed pursuant to Rule 12(b)(6) unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* A court's function "is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985).

### A. The Antitrust Claims

#### 1. *Sherman Act Section 1*

Count one of the amended complaint alleges a violation of section 1 of the Sherman Act, 15 U.S.C. § 1 ["Section 1"]. In order to state a claim under Section 1, a claimant must allege a contract, combination or conspiracy, and a resulting restraint of trade or commerce among the several states. *See Oreck Corp. v. Whirlpool Corp.*, 639 F.2d 75, 78 (2d Cir.1980), *cert. denied*, 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 618 (1981); *Frito–Lay, Inc. v. Bachman Co.*, 659 F.Supp. 1129, 1132 (S.D. N.Y.1986). Moreover, in order to state a proper claim, a plaintiff must allege injury to competition, not just injury to one competitor. *See Jarmatt Truck Leasing Corp. v. Brooklyn Pie Co.*, 525 F.Supp. 749, 750 (E.D.N.Y.1981); *see also Frito–Lay*, 659 F.Supp. at 1133 (to state claim under Section 1, complaint must allege injury to competition in general). Furthermore, a complaint must state *facts* from which anticompetitive effect can be inferred. *See Jarmatt*, 525 F.Supp. at 750 (citing *Larry R. George Sales Co. v. Cool Attic Corp.*, 587 F.2d 266, 273–74 (5th Cir.1979)).

Defendants move to dismiss plaintiffs' Section 1 claim on the ground that the complaint only makes conclusory allegations of anticompetitive effect. Paragraph 117 of the amended complaint (which sets forth the alleged anticompetitive effect) states that the conspiracy "discouraged and prevented competent independent intermediary finders, including plaintiffs, who are not already members of the twenty or so dominant intermediary finders in the relevant market, from attempting to enter or compete in the relevant market." Amended Complaint, ¶ 117(a). The amended complaint fails to identify any of the "twenty or so" intermediary finders who dominate the market. More importantly, the amended complaint fails to identify any finder, beside plaintiffs, who was actually deterred from entering the market as a result of defendants' alleged restraint of trade. Nor does the amended complaint allege facts from which the Court could reasonably conclude that the elimination of plaintiffs would, by itself, result in injury to competition in general.

As plaintiffs have failed to plead facts that would entitle them to relief under Section 1, count one of the amended complaint is dismissed. Fed.R.Civ.P. 12(b)(6).

#### 2. *Sherman Act Section 2*

 Count two of the amended complaint alleges an attempt to monopolize or a conspiracy to monopolize, in violation of section two of the Sherman Act, 15 U.S.C. § 2 ["Section 2"]. To state a claim for attempted monopolization, plaintiff must allege (1) anticompetitive or exclusionary conduct; (2) specific intent to monopolize; and (3) a "dangerous probability" that the attempt will succeed. *H.L. Hayden Co. v. Siemens Medical Systems*, 879 F.2d 1005, 1017 (2d Cir.1989) (citing cases). "A dangerous probability of success may exist where the defendant possesses a significant market share when it undertakes the challenged anticompetitive conduct." *Id.*

The Court finds that the amended complaint does not plead facts which indicate defendants share of the relevant market. The amended complaint is insufficient because it fails to allege facts demonstrating market power and, therefore, a dangerous probability of success. *See Jarmatt*, 525 F.Supp. at 750. The omission of such facts is "fatal." *Mizlou Television Network*,

*Inc. v. National Broadcasting Co.,* 603 F.Supp. 677, 684 (D.D.C.1984). Accordingly, count two is dismissed to the extent it attempts to state a claim for attempted monopolization.

■ Count two also attempts to state a claim for conspiracy to monopolize. The elements necessary to state such a claim are: (1) the existence of a conspiracy to monopolize; (2) overt acts done in furtherance of the conspiracy; (3) an effect on an appreciable amount of interstate commerce; and (4) a specific intent to monopolize. *Association of Retail Travel Agents v. Air Transport Ass'n,* 635 F.Supp. 534, 538 (D.D.C.1986). Unlike attempt to monopolize, a dangerous probability of success need not be proven to establish a conspiracy to monopolize. *See H.L. Hayden,* 879 F.2d at 1019. Thus, "[o]nce a plaintiff establishes a conspiracy with a specific intent to monopolize, proof of success or impending success is irrelevant." *International Distribution Centers, Inc. v. Walsh Trucking,* 812 F.2d 786, 796 n. 8 (2d Cir.), *cert. denied,* 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987).

The amended complaint fails to adequately allege defendants' specific intent to monopolize, an essential element of a conspiracy claim. Furthermore, plaintiffs have failed to allege conduct from which the Court could infer such intent. The Court notes that the section of plaintiffs' brief which discusses the specific intent requirement does not contain any references to the amended complaint where conduct evincing a specific intent to monopolize may be found. As plaintiffs' claim for conspiracy to monopolize is insufficient, count two is dismissed. Fed.R.Civ.P. 12(b)(6).[6]

### 3. *Additional Antitrust Claim*

■ Plaintiffs' new antitrust claim, count fifteen, attempts to state a cause of action for "coercive reciprocal dealing" in violation of Section 1 of the Sherman Act. Plaintiffs allege that defendant Joseph G. Twomey, Lockheed's vice-president and general counsel, threatened the law firm of Shaw and Stedina (where plaintiff Deem worked) that if Deem did not abandon his claim for a finder's fee, Lockheed would withdraw all of its legal business form Shaw and Stedina. Amended Complaint, ¶¶ 72–73.

A reciprocal dealing situation occurs when "two parties face each other as both buyer and seller and one party agrees to buy the other party's goods on condition that the second party buy other goods from it." *Betaseed, Inc. v. U and I, Inc.,* 681 F.2d 1203, 1216 (9th Cir.1982) (citing *Spartan Grain & Mill Co. v. Ayers,* 581 F.2d 419, 424 (5th Cir.1978), *cert. denied,* 444 U.S. 831, 100 S.Ct. 59, 62 L.Ed.2d 39 (1979)).

Plaintiffs' count fifteen fails to state a claim for reciprocal dealing within the meaning of the antitrust laws. There is no allegation that the firm of Shaw and Stedina was coerced into buying anything from Lockheed. Plaintiff is really alleging that defendant Twomey's coercion of Shaw and Stedina was part of the conspiracy to drive plaintiffs out of the intermediary finder's market. This allegation, however, is duplicative of count one, which attempts to state a claim for a conspiracy to restrain trade in violation of Section 1 of the Sherman Act. Thus, count fifteen is dismissed. Fed.R. Civ.P. 12(b)(6).

### B. The RICO Claims

Counts four through seven of the amended complaint allege that defendants violated RICO, 18 U.S.C. § 1961 *et seq.* Specifically, the amended complaint alleges violations of § 1962(a) (using or investing income derived from a pattern of racketeering to acquire an enterprise engaged in interstate commerce), § 1962(c) (conducting the affairs of an enterprise through a pattern of racketeering activity) and § 1962(d) (conspiracy to commit RICO violations). Defendants move to dismiss the RICO claims on the grounds that (1) plaintiffs have not adequately alleged that defen-

---

**6.** Both parties agree that the Donnelly Act, N.Y. Gen.Bus.L. § 340, is patterned after the Sherman Act and is governed by the same standards.

Thus, plaintiffs' claims under the Donnelly Act are dismissed for the reasons discussed in the text.

dants engaged in "racketeering activity;" (2) plaintiffs have not adequately alleged the existence of an "enterprise;" and (3) plaintiffs have not adequately alleged the "use or investment" by defendants of income derived from a pattern of racketeering activity.[7]

### 1. *"Racketeering Activity"*

"Racketeering activity" is defined, in part, as any act which is indictable under certain specified federal statutes. *See* 18 U.S.C. § 1961(1). The four federal statutes which form the predicate acts of "racketeering activity" in the amended complaint are: 18 U.S.C. § 1341 (mail fraud), § 1343 (wire fraud), § 1951 (interference with commerce) and § 1952 (racketeering). *See* Amended Complaint, ¶¶ 130–31, 138–39, 142, 145. Essentially, the claims under §§ 1341 and 1343 are based on alleged acts of fraud and the claims under §§ 1951 and 1952 are based on alleged acts of extortion.[8] Defendants contend that plaintiffs have failed to allege the essential elements of a fraud clam or an extortion claim.[9]

The essential elements of a fraud claim are: "(1) representation of a material existing fact; (2) falsity of the statement; (3) scienter; (4) deception; and (5) injury." *Lehman v. Dow Jones & Co.*, 783 F.2d 285, 295 (2d Cir.1986) (citation omitted).

Although inartfully pleaded, the essence of plaintiffs' fraud claim may be summarized as follows: defendants falsely promised that Lockheed would pay plaintiffs a finder's fee for all companies introduced by plaintiffs which were eventually acquired by Lockheed; in reliance on this fraud, plaintiffs allegedly provided Lockheed with information on a number of potential acquisition candidates, including Metier; had plaintiffs known that Lockheed had no intention of paying them a finder's fee, plaintiffs would have offered the potential candidates to other acquiring companies.

Defendants argue that the amended complaint fails to properly plead the "injury" element of a proper fraud claim. In order to state a claim, plaintiffs must allege that they suffered injury "as a direct and proximate result of [their] reliance on [defendants'] misrepresentation." *Lehman*, 783 F.2d at 296 (citing cases). Under a fraud theory plaintiffs may not recover "benefit of the bargain" or contract damages, and thus must allege " 'injury other than that resulting from ... [defendants] refusal to pay a finder's fee.' " *Id.* (quoting *Philo Smith & Co. v. USLIFE Corp.*, 420 F.Supp. 1266, 1274 (S.D.N.Y.1976), *aff'd*, 554 F.2d 34 (2d Cir.1977)). The only injury plaintiffs have alleged, other than the loss of the finder's fee, is that plaintiffs lost the opportunity to present their acquisition candidates to other potential acquiring companies. Although such an allegation is highly speculative, on a motion to dismiss "a court must read the complaint generously," *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989), and should not dismiss the complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 102. Accordingly, defendants' motion to dismiss the amended complaint because it fails to properly plead fraud as predicate acts of "racketeering activity" is

---

**7.** Defendants also move to dismiss the § 1962(d) (conspiracy) claim on the ground that the underlying § 1962(a) and (c) claims are invalid. As the Court finds that plaintiffs have alleged a valid § 1962(c) claim, the motion to dismiss the § 1962(d) claim is denied.

**8.** None of the alleged predicate acts of extortion are attributable to defendants Durbin or Lodge. Moreover, the only predicate act of fraud attributable to Durbin or Lodge is the mailing of a letter from Lodge to Deem on May 10, 1984. In order to state a claim under RICO, however, a complaint must allege *two* predicate acts of "racketeering activity." *See* 18 U.S.C. § 1961(5).

In addition, plaintiffs cannot attribute predicate acts of fraud committed by other defendants to Durbin and Lodge through conclusory allegations of conspiracy. Accordingly, the RICO counts are dismissed as to Durbin and Lodge.

**9.** Defendants also move to dismiss the predicate acts of fraud on the grounds that such acts fail to meet the particularity requirements of Fed.R. Civ.P. 9(b). The Court finds, however, that the acts of fraud alleged in the amended complaint are pleaded with enough specificity to survive a motion to dismiss on Rule 9(b) grounds.

denied.[10] The Court notes, however, that at a later stage of the proceedings plaintiffs will have to establish specific proof that they suffered injury as a result of the fraud, other than not being paid the finder's fee.

 Defendants also move to dismiss the predicate acts of extortion. Under the Hobbs Act, 18 U.S.C. § 1951, extortion is defined as the extraction of property from another through the wrongful use of fear. *See United States v. Capo*, 817 F.2d 947, 950 (2d Cir.1987) (en banc). The fear in question may be fear of purely economic loss. *See id.*

The predicate acts of extortion alleged in the amended complaint are based on several phone calls from defendant Twomey, Lockheed's vice-president and general counsel, to plaintiff's law partner, Crawford Shaw, of Shaw and Stedina. Amended Complaint, ¶¶ 72–78. Twomey allegedly told Shaw that "[e]ither [plaintiff] dropped his claim or Shaw discharged [plaintiff] and precluded him from working on or receiving any fees from Lockheed's legal work, or if Shaw refused, Lockheed would take its legal business elsewhere...." Amended Complaint, ¶ 73. Later, Shaw, acting on Twomey's instructions, discharged plaintiff. *Id.* at ¶ 77. Defendants claim that these allegations of extortion cannot stand because a client has the absolute right to terminate the attorney-client relationship at any time, with or without cause.

Although the attorney-client relationship is terminable at will, *see Demov, Morris, Levin & Shein v. Glantz*, 53 N.Y.2d 553, 428 N.E.2d 387, 388–89, 444 N.Y.S.2d 55, 57 (1981), it is not claimed, in the instant case, that Lockheed (the client) discharged the law firm of Shaw and Stedina. The amended complaint alleges that Twomey threatened Shaw and Stedina "that if [plaintiff] pursued his claim for the finder's fee against Lockheed, Lockheed would withdraw all of its legal business from Shaw and Stedina...." Amended Complaint, ¶ 72. Thus, it is alleged that defendants

used the threat of economic loss in an attempt to pressure plaintiff into giving up his right to the finder's fee. Moreover, the amended complaint alleges that plaintiff was later fired by his law firm on the instructions of defendants because he refused to drop his claim for the fee. *Id.*, ¶ 77. Based on these allegations, the Court finds that plaintiffs have sufficiently pleaded the predicate acts of extortion.

### 2. *RICO Enterprise and Pattern*

 Defendants argue that the amended complaint does not adequately allege the existence of a RICO "enterprise" because the alleged conspiracy had a definite, short-term goal: to reduce competition in the intermediary finder's market by injuring plaintiffs. Plaintiffs, on the other hand, contend that the amended complaint alleges an ongoing scheme that was not limited exclusively to injuring plaintiffs.

The term "enterprise" is defined for RICO purposes as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The amended complaint alleges three enterprises: Lockheed and Metier (counts five and six), Amended Complaint, ¶¶ 137, 142, and an "association in fact" of various defendants (count four). Amended Complaint, ¶ 129. Each fits within the statutory definition of enterprise.

However, defendants' argument with regard to the continuity of the alleged scheme does apply to the RICO concept of a "pattern of racketeering activity." *See United States v. Indelicato*, 865 F.2d 1370, 1382 (2d Cir.1989) (en banc) ("relatedness and continuity are essentially characteristics of activity rather than of enterprise").

In *H.J. Inc. v. Northwestern Bell Telephone Co.*, —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), the Supreme Court held that "[t]o prove a pattern of racketeering activity a plaintiff ... must show that the racketeering predicates are related,

---

**10.** The motion to dismiss the common law fraud claims, counts twelve and thirteen, is also

denied for the reasons discussed in the text.

*and* that they amount to or pose a threat of continued criminal activity." *Id.* —— U.S. at ——, 109 S.Ct. at 2900 (emphasis in original). The Supreme Court further held that the continuity requirement may be satisfied "where it is shown that the predicate acts are a regular way of conducting defendant's ongoing legitimate business...." *Id.* —— U.S. at ——, 109 S.Ct. at 2908.

The Court finds that the amended complaint contains sufficient allegations to satisfy the relationship and continuity requirements. The predicate acts are related by a common goal of depriving plaintiffs of their finder's fee and excluding plaintiffs from the intermediary finders market. The threat of continuity is established by the allegation that fraud and extortion were a regular way of doing business at Lockheed and Metier. Accordingly, defendants motion to dismiss on the grounds that plaintiffs failed to properly plead the "enterprise" and "pattern" elements of a RICO claim is denied. Fed.R.Civ.P. 12(b)(6).

### 3. *18 U.S.C. § 1962(a)*

■ Section 1962(a) makes it unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in ... interstate or foreign commerce. Defendants argue that the amended complaint does not adequately allege the use or investment by the moving defendants of income derived from a pattern of racketeering activity.

The amended complaint alleges two ways that defendants violated § 1962(a). First, by using income derived from a pattern of racketeering activity in the acquisition of Metier. Amended Complaint, ¶ 133. However, Lockheed acquired Metier, not the moving defendants (the Lockheed employee defendants and Durbin and Lodge). Thus, the moving defendants could not have used any income derived from a pattern of racketeering activity to acquire Metier. Sec-

ond, plaintiffs allege defendants violated § 1962(a) by using or investing income derived from a pattern of racketeering activity in the establishment of an unlawful "association of fact" among themselves. Amended Complaint, ¶ 133. Section 1962(a) "is concerned with the *use of funds* derived from a 'pattern of racketeering activity' to acquire interests in, or invest in, or to operate legitimate enterprises." *Garbade v. Great Divide Mining and Milling Corp.*, 831 F.2d 212, 213 (10th Cir.1987) (emphasis in original). Plaintiffs' amended complaint utterly fails to indicate how any income received by defendants from the alleged unlawful acts was "used" in the establishment or operation of the alleged enterprise. Accordingly, count four is dismissed. Fed.R.Civ.P. 12(b)(6).

### C. Breach of Contract

Counts eight and eleven allege breach of contract claims. Count eight alleges a breach of contract by Lockheed and count eleven alleges a breach of contract by the Lockheed employee defendants. The amended complaint does not allege a breach of contract claim against Durbin or Lodge.

The Lockheed employee defendants move to dismiss count eleven. Plaintiffs do not oppose this motion. Accordingly, count eleven is dismissed.

### D. Unjust Enrichment

■ Count nine of the amended complaint asserts a claim for unjust enrichment. To recover under such a theory a plaintiff must show that the defendant was enriched at the expense of the plaintiff, and that the circumstances were such that in equity and good conscience, the defendant should make restitution. *See Lengel v. Lengel*, 86 Misc.2d 460, 382 N.Y.S.2d 678, 681 (Sup.1976). "A defendant can be enriched by the receipt of money or its equivalent, or by being saved from expense or loss." *Evans v. City of Johnstown*, 96 Misc.2d 755, 410 N.Y.S.2d 199, 203 (Sup. 1978) (citations omitted).

The moving defendants claim that they cannot have been unjustly enriched, as any

enrichment flowed to Lockheed. Plaintiffs contend that the Lockheed employee defendants were enriched in two ways. First, their corporate reputations were enhanced through the fraudulent use of plaintiffs' conficential acquisition candidates list and by saving Lockheed the $1.27 million finder's fee. This enhanced corporate reputation resulted in increased promotions and bonuses. Second, the Lockheed employee defendants owned considerable stock in Lockheed which increased in value because of the Metier acquisition. As for Durbin and Lodge, plaintiffs allege that those defendants were unjustly enriched through the proceeds of the sale of their Metier stock to Lockheed (because the acquisition would not have occurred if Lockheed had to pay the finder's fee).

Plaintiffs' theory of unjust enrichment is extremely speculative and will be difficult to substantiate through specific proof. However, on a motion to dismiss a court "is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985). As the Court finds plaintiffs' claim is legally sufficient, the motion to dismiss count nine is denied. Fed.R.Civ.P. 12(b)(6).

### E. Conspiracy to Induce Breach of Contract

■ Count ten of the amended complaint alleges that defendants "conspired to defraud plaintiffs" of their finder's fee by inducing Lockheed to breach its contract with plaintiffs. Amended Complaint, ¶ 155. The Lockheed employee defendants argue that a corporate agent cannot be liable for inducing a corporation to breach a contract unless the agent was acting adversely to the corporation. *See Zerman v. Jacobs*, 510 F.Supp. 132, 136 (S.D.N.Y.), *aff'd mem.*, 672 F.2d 901 (2d Cir.1981); *Buckley v. 112 Central Park South*, 285 A.D. 331, 136 N.Y.S.2d 233, 236 (1st Dep't 1954). Plaintiffs agree with this statement of the law but contend that the Lockheed employee defendants were acting adversely to Lockheed because their fraudulent behavior resulted in lawsuits and bad press.

This is not the type of adversity the law requires. *See Buckley*, 136 N.Y.S.2d at 237 (a corporate officer may lose his immunity when the officer commits fraudulent acts "motivated by a personal desire for monetary gain...."). Thus, count ten is dismissed as to those defendants.

■ Durbin and Lodge argue that a claim against them for inducement to breach is inconsistent with the allegations in the complaint. The amended complaint alleges that "[d]efendants Durbin and Lodge and Metier *were induced* to enter into the conspiracy to injure plaintiffs by the liklihood [sic] of increased compensation from the acquisition by Lockheed...." Amended Complaint, ¶ 105 (emphasis added). Thus, as plaintiffs are claiming that Durbin and Lodge "were induced" to enter into a conspiracy to injure plaintiffs, they cannot, at the same time, claim that Durbin and Lodge *induced* Lockheed to breach its contract. Consequently, count ten is dismissed. Fed.R.Civ.P. 12(b)(6).

### F. "Unjust Dismissal"

■ Defendants move to dismiss count fourteen, which they characterize as a claim for "unjust dismissal." Plaintiffs contend, however, that count fourteen states a claim for interference with contract. Plaintiffs argue that defendants interfered with plaintiff's contractual relationship with Shaw and Stedina when defendants, acting through Twomey, coerced Shaw and Stedina into discharging plaintiff. The Court finds that the amended complaint states a sufficient claim for interference with contract. *See Strobl v. New York Mercantile Exchange*, 561 F.Supp. 379, 386 (S.D.N.Y.1983). Therefore, defendants' motion to dismiss is denied.

### IV. *Motion to Strike*

Defendants move to strike certain allegations in the amended complaint pursuant to Fed.R.Civ.P. 12(f). After full consideration of the issues involved, this motion is denied.

### CONCLUSION

Defendants' motion to dismiss for lack of personal jurisdiction is denied, without prej-

udice. Fed.R.Civ.P. 12(b)(2). Defendants' motion to dismiss for failure to state a claim is granted in part and denied in part. Fed.R.Civ.P. 12(b)(6). The motion is granted with respect to counts one through four, ten, eleven and fifteen; the motion is denied in all other respects. Plaintiffs' cross-motion to amend is granted in part and denied in part. Fed.R.Civ.P. 15(a). The motion is granted to the extent it seeks to add minor clarifications and additions of fact, but is denied with respect to proposed count fifteen. Defendants' motion to strike is denied. Fed.R.Civ.P. 12(f). Plaintiffs are directed to file an amended complaint within ten (10) days of the filing of this Memorandum and Order. Defendants are directed to file an amended answer within ten (10) days of the filing of the amended complaint.

SO ORDERED.